# CHARLESTON

CURTIN v. STOUT.

Submitted February 8, 1905.    Decided February 28, 1905.

1. SYLLABUS APPROVED.
    Point 1, of Syllabus, *Lazzell* v. *Garlow*, 44 West Virginia 466, re-
    affirmed. (p. 277.)

2. INJUNCTION—*Conflict of Title—Solvency of Defendant.*
    A court of equity will not enjoin the cutting and removal of tim-
    ber from land when there is conflict of title to such land between
    the plaintiff and the defendant, the solvency of the defendant be-
    ing well established. (p. 277.)

Appeal from Circuit Court, Webster County.

Bill by G. W. Curtin against Ross F. Stout and others.
Decree for plaintiff, and defendants appeal.

*Reversed.*

THURMOND & WOODELL and W. W. BRANNON, for appel-
lants.

JAKE FISHER and W. E. HAYMOND, for appellees.

MCWHORTER, JUDGE:

G. W. Curtin claiming two tracts of nine hundred acres and
ninety-nine acres of land in Webster county, lying contiguous
to each other, called together a tract of one thousand, filed his
bill in the circuit court of Webster county praying for an in-
junction against Ross F. Stout, L. White and L. D. Cokeley,
enjoining, restraining and inhibiting them from cutting, skid-
ding or otherwise removing or in any way interfering with the
timber and logs on the said tract of one thousand acres, and
also from completing the building of the tramways, skid-
ways and side-tracks mentioned in his bill, and from other-
wise injuring and defacing plaintiff's land, either by them-
selves, their agents, servants or employes, and for general re-
lief; describing in his bill by metes and bounds the said one
thousand acres of land and alleging that he had had the act-
ual, continued, visible, notorious, distinct and uninterrupted
possession thereof, and that prior to his purchase of the same
and conveyance to him by C. D. Elliot and wife, by deed
dated the 23d of September, 1893, those under whom he
claimed title had such possession since the year 1873, as he

was informed and believed; that his title had never been disputed or questioned, so far as he was informed, except as in said bill stated; that he had been informed that defendant Ross F. Stout claimed title to a small portion of said one thousand acres; that said Stout had no claim or title to said one thousand acres or any part thereof; that said tract was valuable chiefly for the standing and growing timber thereon; that he bought it and held it with the sole view of manufacturing said timber into lumber; that he was engaged in the lumber business and by reason of his large experience in said business and his ability, fitness and extensive and costly preparation for manufacturing timber into lumber he regarded the said timber as of peculiar and special value to him; that he and those interested with him in the lumber business had expended many thousand dollars in mills and other preparations for the manufacturing of lumber, and that said expenditures were made with a view of manufacturing his timber on the one thousand acre tract, among other tracts; that he would sustain incalculable injury should he not be permitted to manufacture said timber; that without his knowledge or consent the defendant Stout had procured his co-defendants, White and Cokeley to go upon said one thousand acres of land with a view of and intention of cutting and removing his said timber, and that with said purpose they had already cut down and felled much of the said standing timber on said land; had cleared said timber and ground thereon, built a skid way over which to transport the timber and logs cut therefrom and were locating a mill for the purpose of manufacturing the same into lumber, and they had procured the B. & O. Railway Company to cause a survey to be made for a side track over which to transport the lumber when manufactured, and that it was their intention and purpose to manufacture and remove said timber from said land unless enjoined and restrained; that, as would appear from a map filed with the bill, the site of the mill the defendants were locating and the tramroad and side-track was wholly on the land and property of plaintiff and entirely removed from any land claimed by the defendants or either of them, or any other person except plaintiff; that if they should be permitted to continue the building said tram-road, skid-way and side-track they would do serious and irreparable injury to the property and land of

plaintiff; that the several trespasses were being continued and advanced from day to day, and would continue unless the defendants, and each of them were enjoined and restrained therefrom; that plaintiff knew nothing of the solvency of the defendants or either of them, except from information and belief, and that from such information and belief charged that if they were permitted to remove said timber and if the damages could be properly ascertained and computed, they nor either of them would have sufficient means out of which the plaintiff could be reimbursed; that should the several trespasses mentioned be continued and completed as alleged, his land would be divested of its principal value and he would sustain an irreparable injury thereby. On the 27th of June 1902, an injunction was granted as prayed for upon the plaintiff's executing an injunction bond in the penalty of $250.00.

At the July rules, 1902, the defendants, Stout, White and Cokeley, filed their joint answer, admitting that it might be true that plaintiff had derived some kind of title to the tracts of ninety-nine acres and nine hundred acres by Elliot conveying the same to him, as in the bill set out, and that it might be true that said Curtin had had some sort of possession of said land; but denied that said Curtin or his grantor, Elliot, ever owned or had any kind of possession of the tract of five hundred acres of land thereinafter set out, which was no part of the ninety-nine acres and nine hundred acres mentioned in the bill; that it was not true that the defendant Ross. F. Stout claimed title to the one thousand acres of land mentioned in said bill; but on the contrary knew nothing of the same; that it might be true that said one thousand acres was valuable for timber, and that Curtin expected or hoped to manufacture the same, and that he was in the lumber business as alleged in the bill, and denied that they had cut any timber down or felled the same or had cleared any land upon the one thousand acres or done any work thereon, except upon the said tract of five hundred acres which they were informed was no part of said one thousand acres, and that Curtin had no claim or title to said five hundred acres or any part thereof; and denied that they or either of them were insolvent, or that they were committing or had committed waste in any way upon the one thousand acres of land, and filed with their answer a chain of title to the five hundred acres which was

owned by their lessor, J. E. McFarland, and filed copies of deeds therefor beginning with a deed dated September 10, 1873, from W. L. J. Corley, clerk of the county court of Braxton county, conveying to P. B. Adams a tract of two thousand and five hundred acres of land on Laurel Creek in what was then Braxton, but now Webster county; a deed dated the 21st day of September, 1891, by P. B. Adams to Isaac Cogar and John Adams for five hundred acres, a part of said two thousand and five hundred acres; deed of the 25th of May, 1900, by which John Adams conveyed his one-half interest in said five hundred acres to said Cogar; by deed of June 1, 1899, Cogar conveyed said five hundred acres to P. F. Kearney, and on the 13th of June, 1900, Kearney conveyed the five hundred acres to J. E. McFarland; that in the month of October, 1900, Walter Hollister, surveyor of Webster county, went upon the ground, surveyed and located the said five hundred acres substantially as called for in the title papers of McFarland, and made his report and a plat thereof, which was filed with the answer, and which shows that it was the same five hundred acres set out in McFarland's title papers, and that it was no part of the one thousand acres claimed by said Curtin; that in the month of April, 1902, McFarland sold to the defendant Ross F. Stout, by verbal contract the timber on said five hundred acres, and acting in good faith under said contract Stout let to contract the logging and sawing thereof to L. White, who took said Cokeley in as partner with him in the work; that respondents had done considerable work substantially as set out in the bill; but upon the five hundred acres as respondents were informed and believed; that the respondents were informed and believed that the said McFarland had a good, valid, and in fact, the only title to said land, and that he had open, notorious and continued possession thereof by himself or others through whom he claimed title thereto for more than ten years last past —"Namely, for about thirty years last past, to-wit:  Since the 10th day of September, 1873, the date of the deed to P. B. Adams, aforesaid;" that respondents had been and were at great expense and charges by reason of their proposed work of logging the said timber so sold them by McFarland and erecting their mills, houses, roads, trams, skidways, slides and their teams, live stock, men, and many other things nec-

essary and used in said business, and up to that time since the date of the service of said injunction on them they had been, and were already damaged hundreds of dollars more than the amount of the bond given by plaintiff to procure the same, and prayed that the injunction be dissolved, and the bill dismissed, and that they recover their costs; that said McFarland be made a party to the suit, and for general relief.

On the 5th day of August, J. E. McFarland tendered his petition in the cause praying to be made a party, and demurred to the bill and prayed that his petition might be taken as his answer to the bill setting up the same title papers to the said five hundred acres of land set out in the answer of the other defendants, and claiming that he and those under whom he claimed title had been in peaceable, undisturbed, uninterrupted, actual possession, continuous and adverse of the said five hundred acres of land for more than thirty years last past; that in April, 1902, he had sold the timber on said five hundred acres of land to the defendant Ross F. Stout; that Stout, by some agreement or arrangement, engaged the said defendants, White and Cokeley to log and skid said timber, or sub-let the logging and skidding to them, or some part thereof, as respondent was informed; that for the purposes of this suit respondent adopted the answer of his co-defendants; denied the insolvency of Stout, White and Cokeley, or either of them, and averred that the said Stout and White owned large amounts of property including realty and personalty, in both Webster and Harrison counties, and as for himself that as appeared by deeds of record in Webster county, he was the owner of several thousand acres of valuable lands, worth as he believed, some $30,000.00 or more, free from debts or other encumbrances, located principally in Webster county; that the plaintiff Curtin had no valid claim or title to the said five hundred acres nor to any part thereof; but that the same was owned exclusively by respondent, petitioner, as fully appeared from his deeds, his actual, continuous, adverse, open and notorious possession and ownership for many years past and up to the present time; and prayed that he be admitted as a party to plaintiff's bill; that his petition be read as his answer, and the bill be dismissed, and the injunction dissolved, and for general relief.

To the answer of the defendants, Stout, White and Cokeley, and petition and answer of McFarland, plaintiff replied generally.

Depositions were taken and filed both by plaintiff and defendants. The cause was heard on the 29th day of August, in vacation upon the plaintiff's bill, the order of injunction, the joint answers of defendants Stout, White and Cokeley and the plaintiff's general replication thereto, demurrer and answer of defendant McFarland, the depositions of witnesses and upon the motion of the defendants made at Sutton pursuant to the notice thereof on the 26th day of August, 1902, in the vacation of the circuit court of Webster county, to dissolve said injunction, when the judge overruled the demurrer and the said motion to dissolve said injunction was overruled, and said injunction continued. From which decree defendants appealed.

It is insisted by counsel for appellee that there is no conflict of title between the plaintiff and the defendants; that the plaintiff claims the one thousand acres and the defendants claim that they cut timber only on the five hundred acre tract claimed by them, and that it is no part of the one thousand acre tract; but the plaintiff's bill alleges "That the defendant, Ross F. Stout claims title to a small portion of said tract of one thousand acres, and he designates on the map filed herewith the portion so claimed by the said defendant; that he does not know the source of title of the said Stout, if any in fact there is, and he here charges that the said Stout has no valid claim or title to said one thousand acres or any part thereof." This allegation clearly discloses the fact of a conflict of title, and the evidence adduced by the plaintiff in the deposition of John B. Dunlap and of Albert Lynch tends to show that the defendants cut some timber within the boundary of the one thousand acres claimed by plaintiff. The defendants claim that they were only cutting timber upon the five hundred acre tract, of which McFarland had good and valid title and in fact the only title, and that he and those under whom he claimed had had adverse possession thereof for more than ten years—ever since the 10th day of September, 1873. There is no proof offered on the part of plaintiff as to his possession of the thousand acres of land. When plaintiff's witness John B. Dunlap was asked if he saw any improvement being made on said land or observed any cut-

ting of timber he answered: "I saw some fresh cut timber lying in Second Run, such as lumbermen use to make log slides." There is no evidence to show title in plaintiff by adverse possession. "To warrant the interference of a court of equity to restrain a trespass two conditions must co-exist: first, the plaintiff's title must be undisputed or established by legal adjudication; and, second, the injury complained of must be irreparable in its nature." *Schoonover* v. *Bright*, 24 W. Va. 698, (syl. pt. 2); *Lazzell* v. *Garlow*, 44 W. Va. 466; *Burns* v. *Mearns, Id.* 744.

Defendants deny emphatically that plaintiff has any title whatever to, or ever had any kind of possession of the said five hundred acres claimed by defendants, or any part thereof, and deny that they cut any timber except upon their said tract of five hundred acres. Plaintiff proves no actual possession of any part of the five hundred acres, nor indeed of the one thousand acres. There is no distinct or clear allegation of the insolvency of the defendants or any of them. Plaintiff says he knows nothing of the solvency of the defendants except from information and belief and from such information and belief he charges that if damages could be properly ascertained and computed the defendants nor either of them would have sufficient money or means out of which plaintiff could be reinbursed—a rather feeble allegation of insolvency. However, the evidence is clear and distinct and removes all doubt, if the allegation of the bill raised any doubt, as to the solvency of the defendants, their solvency being clearly established by the evidence. In *Lazzell* v. *Garlow*, cited, (syl. pt. 2), it is held: "As a general rule, an injunction should not be granted to restrain a mere trespass to real property, when the injury complained of is not destructive of the substance of the inheritance,—of that which gives it chief value,—or is not irreparable, but is susceptible of complete pecuniary compensation, and for which the party may obtain adequate satisfaction in the law courts; and in no such case should it be granted in the absence of an allegation of the insolvency of the defendant." In case at bar we have a clear cut case of conflict of title—no proof of possession by plaintiff, a mere semblance of allegation of insolvency, and the solvency of the defendants clearly established by proof; with no allegation that an action at law has been in-

stituted by the plaintiff, nor that the plaintiff "Intends, immediately, to put the question of title into a course of judicial determination and prosecute it diligently." In *Freer* v. *Davis*, 52 W. Va. 1, (syl. pt. 1), it is held: "A court of equity has no jurisdiction to settle the title and boundary of lands between adverse claimants when the plaintiff has no equity against the party claiming adversely to him." And syllabus, point 2, holds, "Where irreparable mischief is being done or threatened to real estate, going to the destruction of the substance of the estate, such as the extraction of oil and gas, and the title to the land is in dispute, the parties claiming under hostile titles, a court of equity will enjoin the trespass and preserve the property and rights of the parties, pending the determination, in a court of law, of the question of title; and this although no action at law has been instituted, if it appears from the bill that the complainant intends immediately to put the question of title into a course of judicial determination and prosecute it diligently."

For the reasons herein stated the judge of the circuit court of Webster county erred in overruling the motion to dissolve the injunction and continuing the same in force, and the same is therefore reversed and annulled and this Court proceeding to render such decree as the judge of the circuit court should have rendered, hereby dissolves the injunction granted in the cause, and the same is remanded to the circuit court of Webster county with directions to dismiss the bill unless plaintiff can show good reason to the contrary.

*Reversed.*