## McFARLAND v. CURTIN.

### (Circuit Court of Appeals, Fourth Circuit.   May 2, 1916.)

### No. 1408.

1. ATTORNEY AND CLIENT ⬡⟳101(1)—AUTHORITY OF ATTORNEY—DISCLAIMER.
    Without special authority, an attorney cannot enter a disclaimer for his client.
    [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 209–213, 216; Dec. Dig. ⬡⟳101(1).]

2. JUDGMENT ⬡⟳461(1)—SUITS TO VACATE—BURDEN OF PROOF.
    On a bill to vacate a judgment in ejectment, based on a disclaimer filed by an attorney purporting to act for complainant, the defendant in ejectment, complainant has the burden of proof.
    [Ed. Note.—For other cases, see Judgment, Cent. Dig. § 892; Dec. Dig. ⬡⟳461(1).]

3. JUDGMENT ⬡⟳461(3)—SETTING ASIDE—AUTHORITY OF CLIENT—EVIDENCE—SUFFICIENCY.
    In a suit to set aside a judgment in ejectment, based on a disclaimer filed by an attorney purporting to represent complainant, the defendant in ejectment, evidence held insufficient to show that complainant authorized the attorney to file the disclaimer, or ratified the filing.
    [Ed. Note.—For other cases, see Judgment, Cent. Dig. § 895; Dec. Dig. ⬡⟳461(3).]

4. ESTOPPEL ⬡⟳68(2)—AUTHORITY OF ATTORNEY—DISCLAIMER.
    Where an instrument filed by an attorney purporting to represent complainant, the defendant in ejectment, was in the ejectment action treated as a disclaimer, it will be so treated in a suit to set aside the judgment in ejectment, and the attorney's authority cannot be upheld on the ground that the instrument was a mere statement of facts.
    [Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 166, 169; Dec. Dig. ⬡⟳68(2).]

5. EJECTMENT ⬡⟳25(2)—JUDGMENT—RIGHT TO.
    A plaintiff in ejectment is not entitled to judgment in his favor because defendant's title has been forfeited to the state.
    [Ed. Note.—For other cases, see Ejectment, Cent. Dig. § 100; Dec. Dig. ⬡⟳25(2).]

6. COURTS ⬡⟳509—FEDERAL COURT—JURISDICTION—VACATING STATE COURT JUDGMENT.
    Where, in ejectment against complainant, then defendant, who was not a citizen of the state in which the land was located and action was had, judgment was rendered against him on a disclaimer filed without authority, complainant may sue in the federal court to vacate the judgment in ejectment, without making any motion for that relief in the state court; a bill in equity being the appropriate remedy to vacate a judgment for matters dehors the record, as the want of authority to file the disclaimer, and the state court never having had jurisdiction to enter the judgment.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1364–1371; Dec. Dig. ⬡⟳509.]

Appeal from the District Court of the United States for the Southern District of West Virginia, at Charleston; Benjamin F. Keller, Judge.

Bill by J. E. McFarland against George W. Curtin. From a decree dismissing the bill, complainant appeals.   Reversed.

⬡⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

James S. McCluer, of Parkersburg, W. Va. (McCluer & McCluer, of Parkersburg, W. Va., on the brief), for appellant.

W. E. Haymond, of Sutton, W. Va. (Haymond & Fox, of Sutton, W. Va., on the brief), for appellee.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge. The above-named appellant, plaintiff below, who claims to be the owner of a tract of land of some 500 acres in Webster county, W. Va., sold the timber thereon, in May, 1902, to Ross F. Stout and two others, who soon afterwards began cutting the same. Thereupon the defendant, Curtin, who also claims ownership of this tract, or some part of it, brought suit in the circuit court of Webster county against Stout and his associates to restrain the cutting operations which they had commenced, and obtained a temporary injunction. McFarland, who lived in Pennsylvania, was not made a party to this suit, but presently came in by petition, setting up his title, asking to be made a defendant, and adopting the answer which the other defendants had filed. Later, upon the pleadings in the suit and depositions of the parties, a motion was made to dissolve the injunction. This motion was overruled. The defendants took an appeal to the Supreme Court of Appeals of West Virginia, which reversed the lower court and remanded the case, "with directions to dismiss the plaintiff's bill unless good cause is shown to the contrary." Curtin v. Stout, 57 W. Va. 271, 50 S. E. 810. As appears from the reported opinion, the reversal was upon the ground that a court of equity will not enjoin the cutting and removal of timber when there is a conflict of title to the land and the parties sought to be enjoined are solvent, as was found to be the fact in this case. The mandate of the Supreme Court was docketed in Webster county in May, 1905, and plaintiff asserts that he never knew, until shortly before this suit was commenced, that anything further had ever been done in the cause.

In this litigation, at least down to the time when the motion to vacate the injunction was denied, plaintiff was represented by H. C. Thurmond, an attorney of Webster Springs; but for the purpose of prosecuting the appeal he employed a lawyer by the name of Brannon, who then took charge of the case, though it appears that Thurmond continued as attorney of record and assisted in the preparation of the brief.

In June and July, 1905, and presumably because of the decision of the Supreme Court of Appeals in the equity suit, Curtin brought two actions at law against the same parties, including McFarland—one an action in ejectment to recover the land in dispute, and the other for damages on account of timber cut before the injunction was granted. Process was issued in both actions, but no effort seems to have been made to serve the same on McFarland, either personally or by publication, and he alleges that he never heard of the suits until long afterwards.

After beginning these actions at law, and on the last day of July following, Curtin filed an amended bill in the equity cause, setting up the fact that he had begun an ejectment suit to establish his title to the

land, and obtained another injunction. The amended bill was thereupon remanded to rules, with leave to sue out process and mature for. hearing. Process was issued accordingly, but no service was ever had upon McFarland, either in person or by publication, and apparently as to him the cause is still pending. Nothing further appears to have been done in the law actions until January 10, 1906, when Thurmond, purporting to act as attorney for the defendants in the ejectment suit, filed a disclaimer of title to the lands described in the declaration, and the case was continued. On October 3, 1906, judgment was entered in this suit, reciting the disclaimer "heretofore filed," and awarding to Curtin the lands he sued to recover.

As already indicated, the plaintiff avers that he had no knowledge of the filing of the amended bill in the equity cause, and never knew or suspected that the actions at law had been brought, until discovery was made early in September, 1910, as he testified, by the attorneys employed by him to examine the title with a view to selling the property. Within 60 days or thereabouts this action was commenced, the main object of which is to set aside the judgment entered in the ejectment suit in favor of Curtin. There was a demurrer to the bill, which was overruled; but dismissal was ordered on final hearing, and plaintiff appealed to this court. His right to the relief sought is based upon the contention that the action of Thurmond in filing the disclaimer, on which judgment was entered, was wholly without his authority or assent, at the time or afterwards, and that therefore as to him the disclaimer and judgment, with all subsequent proceedings in the case, should be set aside and held for naught. The answer denies that Thurmond acted without authority and asserts the validity of the judgment.

[1] We need not refer to acts of an attorney which will ordinarily bind his client, though done without the client's knowledge or consent, since the law is well settled that an attorney cannot, in a case like this, file a disclaimer or retraxit unless he is specially authorized to do so. As we have just had occasion to say in Glover v. Bradley, 233 Fed. 721, —— C. C. A. ——, decided May 2, 1916:

"But an attorney has no authority to execute a release of his client's claim except upon full payment. Gilliland v. Gasque, 6 S. C. 406. Nor has an attorney the power, except under special authority, to execute a retraxit or disclaimer, or otherwise to bind the client by the surrender of his rights; for a retraxit or disclaimer, or other form of a surrender, being in the nature of a release, must be made by the party himself. Dickerson v. Hodge, 43 N. J. Eq. 47, 10 Atl. 111; Thompson v. Odum, 31 Ala. 108, 68 Am. Dec. 159; Gorham v. Gale, 7 Cow. (N. Y.) 739, 17 Am. Dec. 549; Hallack v. Loft, 19 Colo. 74, 34 Pac. 568; Coates v. Santa Fé Ry. Co. [15 Ariz. 25] 135 Pac. 717; Turner v. Fleming [37 Okl. 75] 130 Pac. 551 [45 L. R. A. (N. S.) 265, Ann. Cas. 1915B, 831]; Forest Coal Co. v. Doolittle, 54 W. Va. 210, 46 S. E. 238."

[2, 3] On the merits, then, the case at bar comes to the question whether the plaintiff ever authorized or ratified the act of Thurmond in filing the disclaimer. Although the bill does not charge Thurmond with fraud, and it may be assumed that he acted without wrongful intent, nevertheless he would be likely to give a favorable account of his conduct. But the most he says, as a witness for defendant, is that he has no distinct recollection that McFarland ever instructed him to enter an appearance in the ejectment suit; that he does not remember

that McFarland ever authorized him to enter a disclaimer in that suit; and that he does not know whether or not he ever informed McFarland of the bringing of the suit or of the filing of the disclaimer. This is far from claiming that he was authorized; it is rather a virtual admission that he acted without authority. Indeed, a careful examination of the testimony persuades us that the filing of this disclaimer was wholly unauthorized. In this connection it is to be noted that Thurmond entered no appearance in the ejectment suit, aside from filing the disclaimer, that he entered no appearance in the suit for damages, that he did nothing in the equity cause after the amended bill was filed, and even seemed to be uncertain whether he knew at the time that an amended bill had been filed. In short, the only thing he appears to have done in any of these suits, after the equity case was argued on appeal, was to enter a disclaimer in the ejectment suit in January, 1906.

Nor is the proof of subsequent knowledge and ratification any more convincing. True, some circumstances were shown which of themselves might tend to support the inference that plaintiff became aware of what had been done and impliedly consented to it by nonaction. But the testimony as a whole leads unmistakably, as we think, to the contrary conclusion. Whilst the burden of proof must be borne by the plaintiff, it is surely reasonable to say, if the disclaimer was filed without authority, as we are constrained to hold, that plaintiff should not be put out of court and his property rights foreclosed, on the theory of later assent, without proof which fairly overcomes his positive denial of acquiescence. It is said that the correspondence which passed between plaintiff and Thurmond contains evidence of plaintiff's knowledge, and the learned District Judge, in his opinion, quotes from letters written to Thurmond in 1908 in which these expressions are found: "What about our litigation with Mr. Curtin? My understanding is you accepted service. Now we would like to have this closed up." And again: "Now in regard to our suit with Curtin, what is doing?" But why should not these expressions be held to refer, as plaintiff contends, to the equity suit, which he knew was still pending? To say that plaintiff had reference to the ejectment suit seems inconsistent with the defendant's contention that plaintiff authorized the disclaimer, or at least ratified the act of Thurmond in filing it. On that theory the ejectment suit had come to an end two years before, when Curtin got final judgment in his favor on the disclaimer in question. If plaintiff was aware of that suit and what had been done in it, he must have known that he had lost the land by an adverse judgment. Why, then, should he be writing about a suit which had long before gone against him? In short, we find nothing in this correspondence which supports the defendant's claim; it appears to us, on the other hand, to be of opposite import. Without further review of the testimony, which would serve no useful purpose, we content ourselves with the statement of our conclusion, after careful study of the evidence, that Thurmond filed the disclaimer without authority, and that his act in so doing has never been ratified by the plaintiff.

[4, 5] In the opinion below it is held that the paper filed by Thurmond is not a disclaimer, but, "in fact, merely a statement of existing

conditions with reference to the property in controversy, reciting that no legal title thereto was vested in McFarland, but that it then belonged to C. W. Fogg by virtue of his purchase thereof in delinquent proceedings." But the paper purported to be a disclaimer; it was accepted and treated by the court as a disclaimer; and it was given the full effect of a disclaimer by the award of a judgment thereon giving the land to Curtin. In view of these facts it seems clear to us that the defendant cannot be heard to say that it was not a disclaimer. And manifestly Curtin was not entitled to a judgment in his favor in an ejectment suit against McFarland because, if such be the fact, the title of the latter had been forfeited to the state.

[6] It is further held by the learned judge that the District Court ought not to take jurisdiction because the proper remedy of the plaintiff, if any he has, is to go into the state court which rendered the judgment and move to set it aside. The opinion says:

"From a review of the federal authorities on this phase of the case, it seems to be well established that federal courts ought not to review, modify, or annul the judgment of a state court, unless such a review is sought on a state of facts dehors the record in the state court."

But the judgment here sought to be set aside is entirely regular and valid upon the face of the record. Granted the authority of Thurmond to file the disclaimer, the state court had before it everything needful for the judgment rendered, and there is nothing of record by which that judgment can be impeached. The plaintiff's case rests upon the charge that the disclaimer was filed without authority and has never been ratified. It is not the record in the state court which is called in question, but its judgment is alleged to be unwarranted and invalid for reasons which the record does not disclose or suggest.

Nor are we satisfied that the remedy mentioned was available at the time this action was brought. The statute of West Virginia to which the court refers, in saying that McFarland had five years from the date of the judgment in which to move to set it aside, appears to apply only to judgments taken by default, and plainly this was not a default judgment. If there be any other statute of the state under which McFarland could have moved to set aside the judgment, four years after it was rendered, its provisions have not been brought to our attention.

But, even if it was open to plaintiff to move in the state court to set aside the judgment, we perceive no reason why he should be required to take that course. As a citizen of another state he had the right to invoke the aid of a federal court to annul the judgment, entered upon a disclaimer filed without authority, which operated to deprive him of his property. A bill in equity was the appropriate remedy, and it cannot be said that resort to it was an interference with the jurisdiction of the state court. This is distinctly held in Robb v. Vos, 155 U. S. 13, 38, 15 Sup. Ct. 4, 12 (39 L. Ed. 52) in which the Supreme Court says:

"As the proceedings in the Gugenheim Case were regular upon their face, and extrinsic evidence was required to show their invalidity, we think a court of equity was the proper tribunal to afford effectual relief. Slater v. Maxwell, 6 Wall. 268 [18 L. Ed. 796]; Cocks v. Izard, 7 Wall. 559 [19 L. Ed. 275];

Oelrichs v. Spain, 15 Wall. 211, 228 [21 L. Ed. 43]; Freeman on Judgments, §§ 449, 500. Nor do we think that the contention that for the Circuit Court of the United States to grant such relief would be to interfere with the jurisdiction of the state court, is well founded. Pennover v. Neff, 95 U. S. 714 [24 L. Ed. 565]; Johnson v. Waters, 111 U. S. 640 [4 Sup. Ct. 619, 28 L. Ed. 547]; Arrowsmith v. Gleason, 129 U. S. 86 [9 Sup. Ct. 237, 32 L. Ed. 630]."

Upon the record here presented we are of opinion that a case was made out for setting aside the judgment in the ejectment suit, and it follows that the decree dismissing the bill should be reversed.

Reversed.

---

⬤➔For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes