BAKER ET UX. *v.* COUNTY COMMISSIONERS
OF TALBOT COUNTY ET AL.

[No. 32, September Term, 1969.]

*Decided November 10, 1969.*

The cause was heard before HAMMOND, C. J., and MC-WILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Harry Sadoff* and *Robert E. Farnell, III,* with whom was *Farnell & Hessenauer* on the brief, for appellants.

*L. Clark Ewing* and *Z. H. Stafford* for appellees.

FINAN, J., delivered the opinion of the Court.

There appears to be a difference of opinion between the present parties as to just what adjudication by the lower court is before us on appeal and a recitation of the facts, as they are interwoven with the pleadings, is necessary for an understanding of the posture of the issues presented.

On June 3, 1968, the County Commissioners of Talbot County and the Town of Easton, owners of the Easton-Talbot County Airport, (appellees) filed a bill of complaint in the Circuit Court for Talbot County against Dawson G. Baker and Ruth C. Baker, his wife, (appellants) to quiet title to a tract of land comprising approximately 50 acres and which land is necessary as a clear zone for the use and operation of the airport. The

appellants contend that they are wrongfully deprived of this land to which they allege ownership.

Service was obtained on the appellants on June 4, 1968, and the record reveals that the appellants knew for some time prior to the filing of the bill of complaint that the appellees claimed title in themselves and emphatically denied the existence of any title in the appellants. There had been correspondence between the counsel for the Town of Easton and the appellants, as well as personal contact with Mr. Baker, at which time the appellees' position was fully explained. It was also suggested by the appellees that the appellants have their own survey made of the property, as it was felt that this would reveal to the appellants that they were in error with regard to their claim of title. However, this suggestion was ignored by the appellants, and Mr. Baker threatened dire consequences to any representative of the Town who came upon this land and did in fact discharge a firearm in the woods near where agents of the appellees were working.

Under the rules of court the appellants should have answered the bill of complaint by June 19, 1968. Before the deadline for filing the answer arrived, Mr. Baker consulted his personal attorney who informed him that he could not handle the matter and referred him to Robert C. Thompson, Esq., a competent and qualified member of the Maryland Bar. He examined the title to the property in dispute and meanwhile succeeded in having the appellees agree to extend the time in which an answer had to be filed. The appellants, up to this time, had not paid anything to Mr. Thompson for his services. Finally, counsel for the appellees advised Mr. Thompson that his clients were becoming impatient. On August 5, 1968, a decree *pro confesso* was obtained and Mr. Thompson was notified that testimony would be taken on August 30. Mr. Baker was apprised of these events. However, it was still understood between counsel for the appellees and Mr. Thompson that he would be allowed to intervene to set aside the decree *pro confesso* and file an answer for his

client should he decide to do so. Counsel for the appellees had given Mr. Thompson and his client until 11 a.m. on August 30 to reach a decision as to whether an answer would be filed. Mr. Thompson also gave Mr. Baker an ultimatum at 10 a.m. on August 30, that unless the $300 retainer fee, which he had discussed with Mr. Baker earlier in the week, was forthcoming, that he would not proceed further with the case. However, Mr. Baker "kind of smiled a little bit and walked off. . .", and that was the last personal contact Mr. Thompson had with him regarding the case. On September 3, 1968, Mr. Thompson wrote to Mr. Baker formally withdrawing from the case.

After receiving Mr. Thompson's letter of September 3, 1968, Mr. Baker attempted to engage the services of two other lawyers but without success. On September 18, 1968, the lower court signed a decree ordering a survey to be made to determine the exact boundary line of the property in question, enjoining the appellants from coming on the property after the completion of the survey and assessing all costs, including the cost of survey, witness fees, and $1,500 attorneys' fees against the appellants.

Sometime toward the middle of October, 1968, the appellants retained their present legal counsel who filed on October 15, 1968, a motion to set aside the decree of September 18, 1968.

On December 9, 1968, a hearing was had upon this last mentioned motion, at which considerable testimony was taken, with the result that the court passed an order overruling the motion.

On January 7, 1969, the appellants filed an appeal to the Court of Appeals of Maryland from the order of the court of December 9, 1968, overruling the motion to set aside the decree of September 18, 1968. On February 6, 1969, the appellees filed a motion to dismiss the appeal, setting forth that the decree from which the appeal was taken was entered on September 18, 1968, and that the motion filed October 15, 1968, to set aside this decree,

did not toll the running of the 30-day period in which an appeal may be taken. Maryland Rule 813. On February 7, 1969, the lower court dismissed the appellants' appeal, relying on *Monumental Engineering, Inc. v. Simon,* 221 Md. 548, 158 A. 2d 471 (1960). On February 14, 1969, an appeal to this Court was filed from the. order of the lower court of February 7, 1969, which dismissed the appeal to this Court which had been taken from the decree of December 9, 1968.

The appellants contend (1) that the lower court abused its discretion in dismissing the appeal which they had taken on January 7, 1969, and that this issue is presently before this Court, and (2) that the procedure by which they were deprived of their property violated their constitutional rights and hence was a nullity.[1]

The appellees make no issue concerning the first contention of the appellants, conceding that the appeal taken on January 7, 1969, from the order of December 9, 1968, having been taken within thirty days, was timely and an appealable order. 2 Poe, *Practice* (Tiffany's Ed. 1925) § 389. The appellees contend that the real, and only, question before this Court on appeal is whether or not the trial court abused its discretion in overruling on December 9, 1968, the appellants' motion to set aside the original decree of September 18, 1968. The Court has no question but that this latter issue is the only one before us.

To bring the issue into proper focus, it is essential that we distinguish the instant case from *Monumental Engineering, Inc., supra.* In *Monumental,* a final decree was filed September 25, 1959, and the decree became enrolled on October 25, 1959. On October 19, 1959, a motion was filed by the defendants to vacate the decree. The motion was heard and overruled on November 6, 1959, and on November 30, 1959, an appeal was taken from the de-

---

1. Under this contention appellants argue that they thought they were represented by legal counsel and hence did not appear or answer in proper person and they did not understand the significance or technical nature of the proceedings, and hence the original decree of September 18, 1968, should be set aside.

cree enrolled on October 25, 1959, which was one month and five days after the enrollment. This Court stated:

> "Since the motion to vacate the decree, in the absence of a special order to that effect, could not and did not suspend the operation of the decree appealed from — and because the order for appeal was not filed within thirty days as Maryland Rule 812 a specifically requires—the motion of the appellee-plaintiff to dismiss the appeal before the transmission of the record to this Court is granted." Id. at p. 549.

Maryland Rule 812 as referred to in *Monumental,* is now Rule 813, and this rule was amended effective July 1, 1968, to permit the lower court, *sua sponte* or upon motion, to strike the order for appeal where the appeal has not been timely filed.

However, in the instant case although the rationale of *Monumental* would be clearly applicable if the appeal filed on January 7, 1969, had been taken from the decree of September 18, 1968, we note that, here, the appeal filed January 7, 1969, was taken from the order of December 9, 1968, wherein the Court overruled the appellants' motion to set aside the decree of September 18, 1968, and not from the decree of September 18, 1968, itself. Accordingly, the appeal filed January 7, 1969, was filed within thirty days of the Court's ruling of December 9, 1968, and was timely. Maryland Rule 812. We are, therefore, of the opinion that the lower court was in error in dismissing the appeal.

We now come to the basic issue in this case and one upon which the arguments of both parties ultimately converge, namely, whether the chancellor in his order of December 9, 1968, erred in refusing to grant the appellants' motion to set aside the decree of September 18, 1968, whereby they were enjoined from using the property in question and assessed costs and attorney's fees. In *Cramer, Trustees v. Wildwood Co.,* 227 Md. 102, 175 A. 2d 750 (1961), Judge (later Chief Judge) Henderson writ-

ing the opinion for this Court in an appeal from an equity decree wherein a rehearing was denied after the enrollment of a final decree, discussed Maryland Rule 625 and Rule 671 a, pertaining to a court's power over an enrolled decree stating:

> "Moreover, although as a general rule an enrolled decree may not be reopened except upon bill for review, or by an original bill for fraud, the court has power to reopen where the case had not been heard on its merits and where there is a showing that the decree was entered by surprise or mistake, or where the circumstances are such as to satisfy the court that the decree should be set aside. *Pugh v. Waclawski,* 211 Md. 346, 350, and cases cited. Rule 625 also recognizes the revisory power of a court, after enrollment of a decree, in cases of "fraud, mistake or irregularity".

On December 9, 1968, the lower court conducted a hearing at which time testimony was taken relative to the facts and circumstances surrounding the enrolling of the decree of September 18, 1968. The record reveals that at this hearing Mr. Thompson, the attorney who was consulted by Mr. Baker and searched the title to the subject property, testified at length concerning the fact that Mr. Baker knew that he was not represented by him after Mr. Baker failed to pay his retainer. The court also found that Mr. Baker knew the status of the proceedings and there is ample evidence in the record to support this conclusion. In addition, William H. Corkran, Jr., the Town Engineer for the Town of Easton, in his deposition which was filed in the proceedings, testified that he had supervised the preparation of a plat which represented the exterior boundaries of the Baker property taken from the description contained in Mr. Baker's deed; the property thus protracted did not include the 50-acre tract in dispute. The plat and pertinent deeds were filed as exhibits and examined by the lower court. The appellees pro-

duced in evidence three conveyances purporting to vest title in them to the land described therein and which descriptions when protracted on the plat embraced the disputed land within their boundaries. There was also testimony that the Town of Easton and Talbot County had used the disputed property for over a 25-year period without protest from Mr. Baker. We think the lower court was correct in its summation of the testimony and evidence before it when the chancellor stated:

> "So I can only come to the conclusion from the way this deed describes your property, and the way it sets up the quantity of land and the evidence of how the Town and County have used this piece of property and this tract over the period of years without any protest from you until this year, that you, in fact, have no meritorious claim whatsoever, to tract No. 3 [the property in dispute] and that is very likely why you were so reluctant, if you will pardon the vernacular, to put your money where your mouth is . . ."

A review of the testimony and exhibits, as they appear in the record, convinces us that there were absolutely no grounds presented by the appellants which would have justified the chancellor's granting their motion to set aside the decree of September 18, 1968, within the holding of *Cramer, Trustees v. Wildwood Co., supra.*

> *Order of December 9, 1968, overruling the appellants' motion to set aside the decree and orders of September 18, 1968, is affirmed, appellants to pay costs.*