Jerry WOHL, sometimes known as
Jerome S. Wohlmuth, et al.

v.

Julius WOHLMUTH, individually, et al.

Civ. No. 70–419.

United States District Court,
D. Maryland.

March 21, 1972.

Claude L. Callegary, Callegary & Callegary, Baltimore, Md., and John M. Bader, Wilmington, Del., for plaintiffs.

James H. Langrall and Weinberg & Green, Baltimore, Md., for defendants Howard Wohlmuth, Alvin G. Waldman, Doris Felice Wohlmuth Hess and Sarah Wohlmuth Miller.

Paul C. Wolman, Jr., Theodore C. Mitchell and Blades & Rosenfeld, P. A., Baltimore, Md., for Julius Wohlmuth, Otto Wohlmuth, Roslyn Wohlmuth Keene and Lucille Waldman Sugar, remaining defendants.

THOMSEN, District Judge.

Jerry Wohl, for himself and as next friend of his infant children, seeks to have this court: (1) set aside on grounds of fraud a decree entered in 1957 by the Circuit Court of Baltimore City in an equity proceeding which he had instituted in that court, (2) assume jurisdiction over the trust involved in that proceeding, remove the trustees, appoint substituted trustees, require an accounting, and grant other relief. Defendants have moved to dismiss.

*Undisputed Historical Facts*

The facts set out in the complaint and in the documents attached to plaintiffs' brief show the following undisputed facts—

Jerry Wohl, sometimes known as Jerry Wohlmuth, is the son of the late Louis Wohlmuth, who, with his four brothers—Morris, Adolph, Julius and Otto—organized and operated a clothing business in Baltimore. They had one sister, Molvin.

Morris Wohlmuth, a bachelor, died in 1937. By his will he divided his estate, including his interest in the family business, into five parts, each of which was left to his surviving brothers as trustees, to be held in trust until the death of the last survivor of the brothers. The provisions with respect to the share of Louis (Jerry's father) are set out in note one in the margin.[1] The provisions of the other four trusts (for Adolph, Julius, Otto and Molvin, respectively) were similar.

Louis Wohlmuth died in 1939. He left surviving him his wife, Sarah, and three children: plaintiff Jerry, another son, Howard, and a daughter, Doris. By his will, Louis divided his residuary estate into two trusts, each of which was left to his surviving brothers as trustees. One trust, called Trust A, was for the benefit of his wife, Sarah, who was to and did receive the income and all of the principal thereof over a period of five years. The other trust was to continue until the death of the last survivor of his brothers. The relevant provisions of that trust are set out in note two.[2] Sarah,

1. "My trustees shall hold the fourth of said five equal parts in Trust until the death of the last survivor of all my brothers and shall pay the income therefrom to my brother Louis Wohlmuth, or, upon his death within said period, to his descendants per stirpes until the death of the last surviving of all my brothers; upon the death of the last surviving of all my brothers, my trustees shall pay over and deliver to the then surviving descendants, if any then living, of Louis Wohlmuth, the principal of said one-fifth share; if, upon the death of my last surviving brother, there shall then be living no descendants of Louis Wohlmuth, my trustees shall pay over and deliver the principal of said one-fifth share to the then living descendants of my other brothers per stirpes; if said Louis Wohlmuth should die, prior to the death of my last surviving brother, without leaving

descendants of him, said Louis Wohlmuth, or, if at any time after Louis Wohlmuth's death, occurring prior to the death of the last surviving brother, his descendants should become extinct before the last surviving brother's death, then, upon the occurrence of either contingency, my trustees shall thereupon immediately pay over and deliver the principal of said one-fifth share to my then living brothers and to then living descendants of then deceased brothers, per stirpes free of any trust."

2. "I give, devise and bequeath the entire rest, residue and remainder of my estate, real, personal, and mixed, including the other one-half of my shares of stock and of any interest of any kind which I may own or to which I may be entitled in the U. S. Woolen Company, a body corporate and their assignees or successors, to my

Louis' widow, is still living, as are his three children.

Both the will of Morris and the will of Louis contained customary spendthrift clauses.[3]

Otto is the only one of the five brothers still living. Adolph died in 1969 and Julius in 1971.

The three brothers who survived Morris and Louis continued to operate the family business and to administer the testamentary trusts until the events of 1956 and 1957. At that time Howard Wohlmuth, Jerry's brother, and Alvin Waldman, son of Jerry's aunt (Molvin), were engaged in the family business. Jerry, who was a lawyer, was not engaged in the business, but was living in Florida.

On July 27, 1956, represented by counsel, Jerry filed a bill of complaint in the Circuit Court of Baltimore City against the surviving trustees under the wills of his father (Louis) and his uncle (Morris), attacking his uncles' administration of the trusts and their operation of the family business.

On October 13, 1956, the Circuit Court of Baltimore City assumed jurisdiction over the trust estates created under the respective wills of Louis and Morris. All living persons having any interest in either estate were made parties to the case, including the then living grandchil-

dren of Louis. Jerry's children were born after 1957.

The family problems were complicated. They included the obligation of the firm conducting the family business to repay in 1960 various sums which had been advanced in 1945 by several persons as "special capital"; the largest of those amounts was $43,036.84, advanced by Jerry's mother. Jerry's brother Howard and his cousin Alvin wanted to become partners in the business; Jerry did not, but wanted to receive some cash.

Accordingly, several agreements were prepared, particularly: (1) the so-called "Waldman Agreement", dated October 10, 1957, dealing with the trust under the will of Morris; (2) the "Family Agreement", dated October 17, 1957, dealing with the trust under the will of Louis; (3) an "Agreement of Release and Assignment", dated December 19, 1957; and (4) a proposed new "Partnership Agreement", to become effective December 31, 1957, if all of the agreements were approved by the Circuit Court.

The four agreements were presented to the late Judge Edwin Harlan, who was then presiding in the Circuit Court. In an elaborate decree, dated December 23, 1957, Judge Harlan recited that he had read and considered the original bill of complaint, the answers thereto, the intervening petition seeking the court's ap-

Trustees hereafter named in Trust and Special Confidence, nevertheless, for the following uses and purposes; to wit: My Trustees shall hold said trust until the death of the last survivor of all my brothers, * * * and upon the death of the last survivor, shall divide the corpus among the persons hereafter declared to be entitled to the same. The net income of the Trust, until the death of the last surviving brother shall be paid to my wife, Sarah Wohlmuth, until her death or until the expiration of this Trust, whichever shall first occur. Upon the death of Sarah Wohlmuth prior to my death or prior to the death of the last survivor of all my brothers, my Trustees shall pay the net income from this Trust to my descendants, per stirpes, by representation including child or children of any deceased child, as they may be constituted from time to time, upon the ex-

piration of this Trust upon the death of my last surviving brother, and, upon such expiration my Trustees shall pay over and deliver the corpus of this Trust to my wife, Sarah Wohlmuth (if she be then living), or, if she be not living, to my then descendants, *per stirpes*, by representation, including child or children of my deceased wife."

3. Each contained the following provision: "My trustees shall make all payments of income provided for hereunder directly into the hands of the beneficiary or beneficiaries entitled to receive the same, and not into the hands of another, howsoever claiming; neither the principal nor the income of any trust fund herein created shall be subject to any assignment or anticipation by any beneficiary hereunder."

proval of a "family settlement" between the parties, together with the consents attached to the petition and the exhibits filed in the court. He then recited in substance the facts set out above in this opinion, together with other facts, and approved for reasons stated in the decree each of the four agreements listed above. Judge Harlan said:

"4. As an integral part of the execution and carrying out of the Family Agreement, and of the Waldman Agreement, and of the entering into of the new Partnership Agreement of December 31, 1957, the Court does now approve the arrangements between Jerome S. Wohlmuth on the one hand, and Howard Wohlmuth, Alvin Waldman, Otto Wohlmuth, Julius Wohlmuth, and Adolph Wohlmuth, on the other hand, as set forth in letters between counsel for these parties of September 11, 1957 and September 13, 1957, heretofore filed in this cause; the Court does also hereby approve, ratify and confirm the form of the said proposed Trust Agreement between the parties dated December 31, 1957; the Court further declares that the payment of $10,000.00, and the placing in trust of the $15,000.00 shall operate as a full and final payment to Jerome S. Wohlmuth for any share that he may have in the Estate of Morris Wohlmuth, as well as any share that he may have in the Estate of Louis Wohlmuth, all as is provided in detail in the said Trust Agreement. The Court holds that, in view of the uncertainties of the clothing business and the lack of confidence by Jerome Wohlmuth in that business, it is wise and reasonable, under the request made by him on the advice of his counsel, that the corpus of his interest in said estates (subject to the one contingency above mentioned) shall be converted into securities or real estate to be held for him by Trustees so as to provide support for himself and his children (if he should later marry). Accordingly, the Court approves the form of proposed Assignment and Re-

lease from Jerome Wohlmuth to Howard Wohlmuth and Alvin Waldman and the Release included therein in favor of the Trustees of the Estates of Louis Wohlmuth and Morris Wohlmuth. The Court further holds that each and all the instruments now approved in this Decree are essential and interrelated parts of the Family Agreement now ratified, approved and confirmed."

As part of the settlement approved by the Circuit Court, Jerry assigned to Howard and Alvin "each and every interest of every kind, vested or contingent, direct or indirect, in the Estate of Louis Wohlmuth and in the Estate of Morris Wohlmuth"; and in the Agreement of Release and Assignment, dated December 19, 1957, Jerry released his uncles individually and as Trustees from any injury of any kind caused to him by any act or deed theretofore performed by them.

The Agreement of Release and Assignment further stated:

"This instrument of Release and Assignment has been entered into after careful consideration by Jerome Wohlmuth himself, and with the continuous aid and assistance of his counsel. This Agreement is fully stated within the four corners of this instrument, and no collateral promises or undertakings have been made or have been attempted to be made by any of the parties hereto to be performed in addition to the undertakings hereinabove set forth."

### Allegations of the Complaint

In the long complaint which he has filed in the present case, Jerry alleges that the true effect, intent and purpose of the several agreements entered into in 1957 was to deprive him of his lawful and inalienable interest in the trust estates created by the respective wills of his uncle (Morris) and his father (Louis), in violation of the Trustee's duty to prevent alienation of the trust

estates according to the spendthrift trust provisions therein. He further allegs:

"26. At the time of the aforesaid transactions, plaintiff Jerry Wohl, was unemployed, without funds, and in a severe state of emotional distress. Defendants, in violation of their fiduciary duty toward said plaintiff took advantage of his condition by persuading him to sell his interest in the said trusts, as aforesaid. Said plaintiff agreed to these transactions because of his emotional and financial state as aforesaid.

"*  *  *

"30. That defendant Trustees by virtue of their dual position of power as general partners in de facto control of the operations of The Wohlmuth Company and as Trustees of the estates of Louis Wohlmuth and Morris Wohlmuth in The Wohlmuth Company, in committing the acts complained of herein took unconsciousable (sic) advantage of said position of trusts in order to deprive the Plaintiffs herein of their lawful interests in said Company for personal financial gain, nepotism and in order to seize full control of said Wohlmuth Company; all in patent disregard of said duties as Trustees and contrary to express testamentary instructions.

"31. In filing the various agreements and documents in the Circuit Court of Baltimore City in Case No. A 36011, as above stated, and in causing a decree to be entered in said action, defendants conspired to commit a fraud upon said court in that they

"(a) Wilfully concealed from said court the fact that the wills established said trusts provided 'spendthrift' provision with respect to said trusts;

"(b) Wilfully concealed from said court the fact that there were contingent beneficiaries, some of whom were in being, but the class of whom had not yet closed.

"32. As a consequence of the aforesaid fraud practiced upon the said Circuit Court of Baltimore City by defendants, the said Court was without jurisdiction to make an order abrogating the testamentary trusts of Louis and Morris Wohlmuth respectively and abrogating the rights of the contingent and noncontingent beneficiaries thereunder, so that the order of said Court, entered on December 23, 1957, was void and without effect."

### Discussion

(A) Federal jurisdiction in this case is based solely on diversity of citizenship. Therefore, under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), this Court must apply state law to "substantive", but not to "procedural", questions that arise. However, as Professor Wright has recently pointed out, "the Erie doctrine has been substantially redefined by the Supreme Court, and it is now clear that no simple dichotomy between substance and procedure will determine the issues on which state law is to control." C. Wright, Law of Federal Courts, 241 (2d ed. 1970). See Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), which modified some of the flat statements in Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L. Ed. 2079 (1945).

Rule 625 of the Maryland Rules of Procedure, headed "Revisory Power of Court Over Judgment" (Anno. Code of Md., Vol. 9B, 1971 Replacement Volume), provides in pertinent part:

"For a period of thirty days after the entry of a judgment, or thereafter pursuant to motion filed within such period, the court shall have revisory power and control over such judgment. After the expiration of said period the court shall have revisory power and control over such judgment, only in case of fraud, mistake or irregularity."

That Rule applies both to judgments entered in a common law court and to decrees entered in an equity court.[4]

There have been many cases in the Court of Appeals of Maryland where Rule 625 was invoked and relief was either granted or denied; but no case has been cited or found in which a suit to set aside a judgment or decree of a nisi prius court in Maryland was brought in another nisi prius court in the State since the adoption of Rule 625.[5] It is at best doubtful whether such a suit could be maintained.

In Popp v. Archbell, 203 F.2d 287 (4 Cir. 1953), the Court was dealing with a state statute which provided that after a non-suit no new proceeding on the same cause of action could be had in any court other than that in which the non-suit was taken, unless good cause for proceeding in another court was shown. The Fourth Circuit held that the jurisdiction of an appropriate federal court was not foreclosed by that statute. See also Markham v. City of Newport News, 292 F.2d 711 (4 Cir. 1961).

■ Based on these decisions, it appears that this court's jurisdiction could not be ousted by a state procedural rule.[6]

In 7 J. Moore, Federal Practice ¶ 60.-37 [3], p. 637, (2d ed. 1971), Professor Moore states:

"And prior to Erie it was generally stated that the aggrieved party could invoke the federal remedy, by an original action brought in the federal court, without first pursuing the rem-

---

4. See, e. g., Meyer v. Gyro Transp. Systems, 263 Md. 518, 526 et seq., 283 A.2d 608 (1971); New Freedom Corp. v. Brown, 260 Md. 383, 385–386, 272 A.2d 401, 402–403 (1971); Kaylor v. Wilson, 260 Md. 707, 711, 273 A.2d 185, 187 (1970); Hohensee v. Minear, 259 Md. 603, 607, 270 A.2d 776, 778 (1970); Board of County Comm'rs v. Baden Vol. Fire Dept., 257 Md. 666, 670–671, 264 A.2d 844, 846 (1970); Wooddy v. Wooddy, 256 Md. 440, 449 et seq., 261 A.2d 486, 491 et seq. (1970); Baker v. County Comm'rs, 255 Md. 490, 495 et seq., 258 A.2d 399, 401–402 (1969); Grantham v. Prince George's County, 251 Md. 28, 33–37, 246 A.2d 548, 551–553 (1967); Gray v. Gray, 245 Md. 713, 228 A.2d 441, cert. denied, sub nom. Gray v. Porter, 389 U.S. 972, 88 S.Ct. 468, 19 L.Ed.2d 463 (1967); Pinkston v. Swift, 231 Md. 346, 351, 190 A.2d 533, 536 (1963); Cramer v. Wildwood Development Co., Ltd., 227 Md. 102, 107, 175 A.2d 750, 753 (1961); Kennard v. McKamer Realty Co., 224 Md. 490, 496–498, 168 A.2d 369, 372–373 (1961).

5. In an old case, Maryland Steel Co. v. Marney, 91 Md. 360, 46 A. 1077 (1900), decided long before Rule 625 was adopted, a defendant against which a judgment had been rendered in a common law court filed a motion in the law court to strike the judgment, and a bill of complaint in an equity court to restrain its enforcement. The Court of Appeals said: "We will not stop to discuss the point, raised by the appellee, whether a party can make a motion to strike out a judgment in the court where it is rendered and at the same time file a bill in equity to have it set aside. There may be cases where the aid of a court of equity is necessary to do full justice, although application has been made to strike out the original judgment. Under the peculiar circumstances of this case, where there is a judgment in the court below, which was affirmed in this court and then superseded, a court of equity could undoubtedly afford more ample relief, if the appellant is entitled to it, than could be obtained in the court of common pleas, especially if it be necessary to enjoin the holders of the judgment from enforcing it, as this bill seeks to do. We will therefore pass on to the consideration of the bill without further reference to that question." 91 Md. at 369, 46 A. at 1079. Since the decree under attack in the instant case was entered in an equity court, there is no other court in Maryland which could afford more ample relief to plaintiff than the court in which the decree was entered, and the discussion in Maryland Steel Co. v. Marney does not support the view that such an action as plaintiff has filed in this court could have been maintained in any court in Maryland except the court in which the decree had been enrolled.

6. Whether this court could be prevented from exercising its jurisdiction by a state statute or rule which prohibited any independent suit to attack an enrolled decree, but required that any such effort must be made by motion in the original case, need not be decided here.

edy provided by state procedure. Insofar as this doctrine permits resort to the federal court in situations where an independent action would lie in the state court it is sound; but we believe it should be re-evaluated insofar as it permits the federal court to disregard the adequacy of the state remedy for relief by motion or other supplementary proceedings in the state court which rendered the judgment. If the supplementary state remedy is not a plain, adequate and complete remedy then resort to the independent action in the federal court seems eminently proper. If, on the other hand, the state supplementary remedy is plain, adequate and complete, we believe, despite orthodox statements as to the test of federal equity jurisdiction, that an appropriate regard for state judicial administration should normally cause the federal court, in the exercise of a sound discretion, to refuse to exercise its equitable powers." (p. 638)

■ In the case under consideration here, the remedy in the Circuit Court of Baltimore City, the state equity court which entered the decree, is plain, adequate and complete.[7] So, although this federal court has jurisdiction to entertain the instant action, it agrees with Professor Moore that in the exercise of its discretion, it should refuse to exercise its equitable powers, and should require plaintiffs to proceed in the court in which the decree was entered and enrolled.

■■ (B) If, on the other hand, this court should consider the merits, it appears that the present complaint does not allege a cause of action which would justify the relief requested. Under the substantive law of Maryland, a person attacking an enrolled decree under Rule 625 must not only establish fraud, mistake or irregularity, but must also show ordinary diligence, good faith, and a meritorious cause of action or defense in

the original proceeding. Shaw v. Adams, 263 Md. 294, 296, 283 A.2d 390 (1971); Tasea Investment Corp. v. Dale, 222 Md. 474, 478–479, 160 A.2d 920, 923 (1960).

Jerry Wohl has not shown ordinary diligence. It is not necessary to question his good faith. It does not appear that his cause of action in the original suit was meritorious in light of the findings in the consent decree.

The allegations in paragraphs 26, 30, 31 and 32 of the complaint, set out above, do not amount to fraud in light of the admitted facts that Jerry Wohl, himself a lawyer, was represented by counsel of his own choosing, entered into the family settlement, and consented to the decree in which Judge Harlan stated that he had read and considered the exhibits, which showed the interest of the trustees and included the two wills containing the spendthrift clauses.

■ Moreover, plaintiffs may not maintain such an action as this while they retain the benefits they received under the agreements and the state decree. Dubin v. Mobile Land Corp., 250 Md. 349, 243 A.2d 585 (1968); See also FPC v. Colorado Interstate Gas Co., 348 U.S. 492, 502, 75 S.Ct. 467, 99 L.Ed. 583 (1955); Burgess v. Nail, 103 F.2d 37, 44 and n. 11 (10 Cir. 1939). Jerry received money under the agreements and the decree and both Jerry and his after-born children have interests in the small trust created by the agreements, as approved by the decree.

■ The action is premature as to the minor plaintiffs. Even if the state court decree were set aside, the minor plaintiffs could receive nothing unless both Jerry and his mother predecease 75 year old Otto Wohlmuth. Their interest is tenuous, at best. On their behalf, Jerry seeks a declaratory judgment. Whether a federal court should render a declaratory judgment is a question to be decided by federal law. Chase National Bank

---

7. See cases cited in note 4, above. Indeed, relief by petition filed in the original proceeding may in certain circumstances be granted on even broader grounds than in a separate suit under Rule 625a. New Freedom Corp. v. Brown, 260 Md. 383, 385–386, 272 A.2d 401 (1971).

v. Citizens Gas Co., 113 F.2d 217, 230 (7 Cir. 1940), reversed on other grounds, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47; U. S. Fidelity & Guaranty Co. v. Koch, 102 F.2d 288, 293 (3 Cir. 1939); M. Swift & Sons, Inc. v. Lemon, 24 F.R.D. 43, 45 (S.D.N.Y.1959). In deciding whether to grant a declaratory judgment a court must attempt to strike a balance "between the needs of the plaintiff and the consequences of giving the desired relief." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431, 68 S.Ct. 641, 92 L.Ed. 784 (1948). Compare Byers v. Byers, 254 F.2d 205, 210–213 (5 Cir. 1958). The interests that militate against entering a judgment declaring the state court decree a nullity are weighty, including (a) the disruption to the business and financial interests of defendants, and (b) federal intrusion into the affairs of the state courts.

This court concludes that it should dismiss the complaint filed in this case, but without prejudice to any rights plaintiffs may have to assert their claims in the state court.