Jerry WOHL, sometimes known as
Jerome S. Wohlmuth, et al.,
Appellants,

v.

Roslyn Wohlmuth KEENE et al.,
Appellees.

No. 72–1706.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 6, 1972.

Decided April 4, 1973.

172

John M. Bader, Wilmington, Del. (Bader, Dorsey & Kreshtool, Wilmington, Del., Claude L. Callegary and Callegary, Callegary & Smith, Baltimore, Md., on brief), for appellants.

Theodore C. Mitchell, Baltimore, Md. (Paul C. Wolman, Jr., Blades & Rosenfeld, James H. Langrall, John J. Woloszyn and Weinberg & Green, Baltimore, Md., on brief), for appellees.

Before WINTER, CRAVEN and WIDENER, Circuit Judges.

WINTER, Circuit Judge:

Invoking the diversity jurisdiction of the district court, plaintiffs sought to have the court (a) grant a declaratory judgment voiding a prior decree of a Maryland equity court and voiding certain settlement agreements to which one of the plaintiffs was a party, and (b) assume jurisdiction over two trusts, remove the trustees, appoint substituted trustees, require an accounting, and grant other relief. The decree and the settlement agreements, all of which were

made in 1957, purportedly settled a dispute between the parties over two testamentary trusts. Plaintiffs claimed that they should be relieved from both, because the settlement agreements and decree were procured by fraud, and those agreements and the decree violated Maryland law and the spendthrift trust provisions in the two trusts.

The district court, 340 F.Supp. 107, dismissed the complaint without prejudice to plaintiffs' rights to seek relief from a state court, holding that while it had jurisdiction to adjudicate the dispute, plaintiffs had a "plain, adequate and complete" remedy in the state equity court rendering the decree, so that the district court, in the exercise of its discretion, should "refuse to exercise its equitable powers."[1] Alternatively, and on the merits, the district court concluded that plaintiffs had not "shown" diligence in bringing suit, or alleged fraud, so as to entitle them to relief under applicable Maryland law and, moreover, that plaintiffs could not retain the benefits derived from the settlement agreements and the prior decree and still sue. Finally, the district court ruled that, in any event, suit by the minor plaintiffs was premature. As to its first ground of decision, we understand that the district court invoked the doctrine of abstention; we think it inapplicable in a case of this type. As to the alternate grounds of decision, we think the case inappropriate for summary disposition. Accordingly, we reverse the judgment of dismissal and remand the case for further proceedings.

I.

██ ██ The undisputed facts are set forth in detail in the opinion of the district court and need not be restated here. It suffices to summarize by stating that plaintiff Jerry Wohl, sometimes known as Jerry Wohlmuth, was the beneficiary of certain testamentary trusts created by one of his four uncles and his father. The trusts came into being in 1937 and 1939. The trusts contained spendthrift clauses customary in Maryland in documents of this nature.[2] The two minor plaintiffs are the children of Jerry Wohl, and they may have a possessory interest in the trusts depending upon the occurrence of certain contingencies. The *res* of the trusts was primarily the testators' interests in the family clothing business originally operated by Jerry Wohl's father and his four uncles.

In 1956, Jerry Wohl sued the trustees (who were his other uncles), attacking their administration of the trusts and their operation of the family business. A state equity court assumed jurisdiction over the trusts. The litigation was ultimately settled by a series of family agreements and a consent decree of the equity court. The effect of the settlement, from the standpoint of Jerry Wohl, was that he sold his interests in the trusts, and released all claims

---

1. The district court relied primarily on Rule 625 of the Maryland Rules of Procedure which gives a Maryland trial court revisory power over its judgment or decree. Even after the expiration of thirty days after entry, a Maryland court is vested with revisory power "in case of fraud, mistake or irregularity." Presumably, upon an appropriate showing, the Maryland equity court could withdraw its decree approving the settlement agreements and terminating the original litigation.

2. Both trusts provided that income payable to any beneficiary should be paid "into the hands" of the beneficiary "and not into the hands of another," and that neither income nor principal should be subject to "any assignment or anticipation by any beneficiary," and, hence, under Maryland law were spendthrift trusts. The purpose of a spendthrift trust is to protect a beneficiary from his own improvidence by protecting his income (and here, principal, also) from his creditors and rendering it inalienable by him before payment. Maryland law deems a spendthrift trust valid and enforceable. See generally, Safe Deposit and Trust Co. of Baltimore v. Robertson, 192 Md. 653, 65 A.2d 292 (1949); Manders v. Mercantile Trust & Deposit Co., 147 Md. 448, 128 A. 145 (1925).

against the trustees, for $10,000 in cash paid to him and $15,000 to be placed in a new trust to provide support for himself and his children (if he should later marry, as he subsequently did).

In the district court, Jerry Wohl attacked the prior transactions, alleging that the sale of his interests in two spendthrift trusts violated state law and was in derogation of the intent of the testators who created the trusts. He alleged also, that when he entered into the settlement he was unemployed, without funds, and in a severe state of emotional distress; that the trustees and other beneficiaries of the trusts, in breach of their fiduciary duty, "took advantage of his condition by persuading him to sell his interest in the trusts," and that he agreed to sell because of his emotional and financial state. He further alleged that defendants conspired to commit a fraud in the state equity court by willfully concealing from the court the fact that the trusts contained spendthrift provisions and that the class of contingent beneficiaries under the trusts was not closed, with the result that the state equity court lacked jurisdiction to enter the decree.

## II.

That the district court's diversity jurisdiction was properly invoked was not questioned by the district court and it is not contested on appeal. As a consequence, we proceed directly to a consideration of whether, as the district court concluded, it possessed the discretion not to exercise that jurisdiction in the case at bar. We think not.

The judge-made doctrine of abstention is applicable only in special circumstances, AFA Distributing Co., Inc. v. Pearl Brewing Co., 470 F.2d 1210, 1213 (4 Cir., Jan. 3, 1973), and none of the traditional factors justifying abstention appear to be present in the case at bar.

█ Abstention may be appropriate where state action is being challenged in a federal court as being contrary to the federal Constitution, and resolution of state law questions might be dispositive of the case. Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959); Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); AFA Distributing Co. v. Pearl Brewing, supra. Abstention may also be warranted to avoid unnecessary conflict with the state in the administration of its own affairs. Burford v. Sun Oil Co., 319 U.S. 315, 63 S. Ct. 1098, 87 L.Ed. 1424 (1943); Alabama P.S.C. v. Southern Railway, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951). AFA Distributing Co. v. Pearl, supra, 470 F.2d at 1213.

Abstention is *not* appropriate solely to avoid the decision of difficult state law questions. Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943); McNeese v. Board of Ed. for Community School District, 373 U.S. 668, 673 n. 5, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); AFA Distributing Co., Inc. v. Pearl Brewing Co., 470 F.2d 1210 (4 Cir. 1973); Martin v. State Farm Mutual Automobile Insurance Co., 375 F.2d 720 (4 Cir. 1967). See generally, Wright, Federal Courts, § 52, 2nd ed., 1970.

█ Although abstention may be proper when the unsettled question of state law is one which only a state tribunal could authoritatively construe, Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Crawford v. Courtney, 451 F.2d 489, 492 (4 Cir. 1971); see Lake Carrier's Assoc. v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972), that factor is not present in the instant case. The district court's concise alternative decision on the merits, 340 F.Supp. at 113, and its citation to numerous Maryland cases demonstrates that the applicable state law does not lack certainty. See Akrotirianakis v. Burroughs, 262 F. Supp. 918, 925 (D.Md.1967) (Thomsen, C. J.).

██ In diversity cases where state law is relatively settled, discretion to abstain is especially limited:

> The diversity jurisdiction was not conferred for the benefit of the federal courts or to serve their convenience. Its purpose was generally to afford to suitors an *opportunity in such cases*, at their option, to assert their rights in the federal rather than in the state courts. In the absence of some recognized public policy or defined principle guiding the exercise of the jurisdiction conferred, which would in exceptional cases warrant its non-exercise, it has from the first been deemed to be the duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment.

Meredith v. City of Winter Haven, 320 U.S. 228, 234, 64 S.Ct. 7, 11, 88 L.Ed. 9 (1943). See also County of Alleganey v. Frank Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959).[3] But none of the "exceptional circumstances" enumerated in *Meredith,* supra, 320 U.S. at 235, 64 S.Ct. 7, applies to the case at bar.

In concluding to abstain, the district court placed heavy reliance on 7 Moore, Federal Practice ¶ 60.37 [3], p. 638 (2nd Ed., 1972). The apparent thrust of the citation is that if an independent state proceeding would lie to invoke the relief sought, a similar action brought instead in a federal court would be appropriate; but if a supplementary state proceeding, by motion or other pleading, is available and is "plain, adequate and complete," a federal court should abstain from exercising its equitable powers.

Because the district court read Maryland Rule 625 to provide such relief by way of a supplementary proceeding in the same court that rendered the original decree, the district court declined to exercise its equitable powers.

The distinction advocated by Moore finds little support in case law. The primary case cited by Moore in its support is Griffith v. Bank of New York, 147 F.2d 899 (2 Cir. 1945), cert. denied 325 U.S. 874, 65 S.Ct. 1414, 89 L.Ed. 1992 (1945). This was a diversity case where the district court dismissed a claim by a beneficiary of a trust against the testamentary trustee. Several state judgments in the case had preceded the federal suit. Deciding first that the federal court was not compelled to deny relief on the facts presented, the Court of Appeals reasoned:

> Assuming power to act, nevertheless should the district court refuse to take jurisdiction in the exercise of discretion? Although we have found no direct authority, it would seem that there should be some discretion in a federal court to refuse equitable relief *where state procedure is intended to be exclusive*—at least in the absence of a showing that that procedure is inadequate to protect a plaintiff. (emphasis supplied). 147 F.2d at 904.

Yet, having suggested this result, the Court, cognizant of Meredith v. City of Winter Haven's language reminding of "the general duty of federal courts in diversity cases to decide questions even involving state law unless some exceptional circumstances . . . intervene," concluded that no sufficient ground for dismissal by the district court had been shown.[4]

---

3. Even the proposal of the American Law Institute to *contract* federal jurisdiction would not permit abstention in the present case. See ALI, Study of the Division of Jurisdiction Between State and Federal Courts, 48–50, 282–298 (1969). Indeed, as the commentary to proposed § 1371 indicates, the abstention doctrine is applicable only in a suit where it is claimed that state legislative or administrative action is invalid because contrary to controlling federal law. Even then, the appropriate remedy is stay, and not dismissal, as was granted here.

4. The only other case cited by Moore is Osterling v. Commonwealth Trust Co., 35 F.Supp. 704, aff'd 115 F.2d 809 (3 Cir. 1940). Although somewhat similar factually to the case at bar, that case involved the accounting of an estate within the exclusive jurisdiction of a probate

Our own prior decisions indicate, although they do not expressly decide, that abstention was improper, even where diversity jurisdiction was invoked to attack collaterally a judgment of a state court. The Firestone Tire & R. Co. v. Marlboro Cotton Mills, 282 F. 811, 815–816 (4 Cir. 1922); McFarland v. Curtin, 233 F. 728, 732–733 (4 Cir. 1916). *See also* Resolute Insurance Company v. State of North Carolina, 397 F.2d 586, 589 (4 Cir. 1968).

■ Our analysis of the supporting authority undergirding the portion of ¶ 60.37 [3] relied on by the district court, and the view we have consistently expressed in earlier cases, persuades us that the cited portion of Moore should not be followed. Overall, our conclusion is that abstention was improper.

### III.

We do not agree that plaintiff's alleged cause of action may be summarily dismissed for the reasons advanced by the district court.[5]

■ The conclusion that Jerry Wohl had not shown ordinary diligence and hence was barred from suing suggests that he was guilty of laches. The action in the district court was equitable in nature and no statute of limitations was directly applicable. But laches as a defense to the assertion of an equitable claim depends not only upon inaction during the passage of time, but also upon a change of position to their detriment on the part of the persons against whom the claim is asserted. Since there were no allegations or proof in this respect, lack of ordinary diligence *per se* was no bar to the action.

The conclusion that Jerry Wohl's "cause of action in the original suit was [not] meritorious, in light of the find-

ings of the consent decree," does not, in our view, bar relief. Of course it is true that in order to set aside an enrolled decree under Md. Rule 625, a state court must also find that the moving party has a meritorious cause of action in the *original* suit and that he has shown "such facts and circumstances as will certainly establish the fraud . . . allegedly resorted to in obtaining the judgment sought to be vacated." Tasea Development Corp. v. Dale, 222 Md. 474, 479, 160 A.2d 920, 923 (1960). But, in the suit before us, Wohl has alleged that fraud was practiced, both on him and on the state equity court. Its findings, contained in the consent decree, may therefore be suspect. Certainly it did not adjudicate Wohl's original charges of mismanagement of the trust assets, so that at the present time the merit or lack of merit in the original case is unknown.

The district court also concluded that the federal complaint had not sufficiently alleged fraud, because Wohl, "himself a lawyer, was represented by counsel of his own choosing, entered into the family settlement, and consented to the decree in which Judge Harlan [the state judge] stated that he had read and considered the exhibits, which showed the interest of the trustees and included the two wills containing the spendthrift clauses." We think summary disposition improper.

■ These facts are, of course, relevant to the issue of fraud, but they are not determinative when Jerry Wohl has alleged, in the complaint and under oath in his affidavit, that (1) his uncles, who were in complete control of the family business, had told him that he would gain nothing by pursuing his suit for an accounting, and that he would be well

court, and the essential charges in the federal complaint had been submitted to and decided by the probate court. Moreover, the case was decided prior to *Meredith*, supra, and the modern development of limitations upon the abstention doctrine.

5. At the outset, it is not clear whether the district court, in passing on the merits, decided a pure motion to dismiss or whether, since the complaint had been amplified by the filing of Jerry Wohl's affidavit, the district court granted summary judgment. We do not find it necessary to resolve this procedural ambiguity.

advised to arrange an amicable settlement of that suit; (2) his uncles advised him that he was a beneficiary under their wills, that he would eventually receive substantial benefits, and that if he would be "reasonable" about the accounting suit they would not change their wills; (3) that during the relevant period he was unemployed, "suffering from alcoholism," and in need of financial assistance; and (4) subsequent to the entry of the decree his counsel advised him that the state equity court had not been told of the spendthrift provisions and that the court had not discovered them on its own. We think that these allegations were sufficient to raise factual issues of whether fraud had been practiced on either Jerry Wohl or the state equity court, or both, and that the case was inappropriate for summary disposition.

The district court's concern that plaintiffs may not maintain the action while retaining the benefits of the earlier settlement is well taken, but it, too, is not a ground for summary disposition. As a general rule, when a party knows the facts and *voluntarily* accepts the benefits of a judgment, he thus waives any errors in the decree and estops himself from appealing the decree. Dubin v. Mobile Land Corp., 250 Md. 349, 243 A.2d 585 (1968). Here, there is not an appeal; there is a collateral attack based on fraud. Wohl alleges in effect that he did *not* know the facts, and accepted the state decree and its benefits under both duress and the mistaken impression that this was essentially his only choice. He alleges that fraud may also have been committed on the court. Accepting the allegations as we must at this time, Wohl's allegedly innocent acceptance of the benefits should not prevent these issues from being resolved.

Of course, plaintiffs may not retain the fruits of the 1957 transactions and regain their rights under the trusts, in addition; but, if plaintiffs are found to be entitled to benefits in the present action, there will be ample opportunity to reduce their recovery by what they may have already received. There is no need totally to deny recovery.

Nor do we think that the action is "premature," as the district court concluded, with respect to the minor plaintiffs. It seems obvious that they would be entitled to no greater rights than their father, Jerry Wohl, and if their father is shown to be entitled to relief there would be no greater burden on the defendants to adjudicate the rights of the minor plaintiffs now rather than later. Of course, at most, the minor plaintiffs would be entitled only to declaratory relief since they have no present possessory interest.

Overall, we conclude that the merits should be adjudicated only after an evidentiary determination, or at least a full opportunity for the parties to develop a case on motion for summary judgment.

Reversed.