AD+SOIL SERVICES, INC.

v.

The BOARD OF COUNTY COMMIS-
SIONERS OF QUEEN ANNE'S
COUNTY, et al.

Civ. A. No. N–83–4413.

United States District Court,
D. Maryland.

June 25, 1984.

**1140**

Benjamin R. Civilettei, J. Phillip Jordan, James A. Dunbar, and Venable, Baetjer & Howard, Baltimore, Md., for plaintiff.

Roger D. Redden and Piper & Marbury, Baltimore, Md., for defendants.

## MEMORANDUM

NORTHROP, Senior District Judge.

Plaintiff, Ad+Soil Services, Inc., ("Ad+Soil"), is a Pennsylvania Corporation in the business of transportation, processing, and storage of sludge and the incorporation of sludge into farmland, where the sludge enriches the soil. Plaintiff brought this action for a declaratory judgment pursuant to 28 U.S.C. sections 2201 and 2202. Plaintiff alleges that certain of the recent amendments to the Queen Anne's County Comprehensive Zoning Ordinance are violative of the Constitutions of the United States and the State of Maryland and invalid under other laws of Maryland. Presently before this Court is a motion to dismiss filed by the defendants: the Board of Commissioners of Queen Anne's County, Oscar A. Schultz, President of the Board, Thomas F. Pierson, Vice-President of the Board, Vernon B. Sultenfuss, County Commissioner and Wayne L. Gardner, Zoning Administrator. (Hereinafter collectively referred to as "the Board"). The motion is based upon the doctrine of abstention. Defendants argue that this Court should abstain based upon principles of federalism because such principles are particularly significant where the land use and zoning policies of a local government are at issue. Oral argument by counsel for the parties was heard on June 21, 1984.

## FACTS

The relevant facts as stated in the complaint are as follows: In June of 1982, Ad+Soil, entered into a contract with the Washington Suburban Sanitary Commission. Ad+Soil contracted to dispose of sludge generated by the Blue Plains Wastewater Treatment plant located just outside Washington, D.C. The Blue Plains plant serviced residents of the District of Columbia and its Virginia and Maryland suburbs. Ad+Soil started operations under the contract in September of 1982. Ad+Soil sought a state permit in order to use a farm zoned "A–1" as a sludge storage, transfer, and distribution facility. On December 21, 1982, the County Zoning Administrator issued a cease and desist order prohibiting Ad+Soil from operating a sludge storage facility in an "A–1" zone. Gardner later advised Ad+Soil that the proper zone would be a "B–2" zone. (Complaint, Exhibit C). Thereafter, Ad+Soil leased a tract of B–2 zoned land from R.B. Baker & Sons, Inc. ("the Baker property").

In June of 1983, Ad+Soil began preparation of the facility on the Baker property. Throughout this time period, Ad+Soil representatives had been conferring with county officials "to determine whether Ad+Soil and/or Baker would be required to take further action with respect to the facility." (Complaint, paragraph 23). On August 23, 1983, Gardner notified Baker that it would have to comply with conditions concerning a prior "conditional use" agreement before zoning permits could be issued for the sludge facility. Baker thereafter filed an application for relief from the conditional use agreement.

On September 1, 1983, Ad+Soil filed an erosion and sedimentation control plan with the county office of the Soil Conservation Service of the United States Department of Agriculture ("SCS"). This plan was for a portion of the Baker property which was in an "M–2" district and which plaintiff refers to as "the Route 18 site." After some changes were made, the SCS approved the plan and forwarded the approved plan to the County Planning Commission. The County Commission accepted the application and referral fees, but refused to issue the permit at that time. On September 13, 1983, after complying with the state procedures, Ad+Soil submitted an application for a zoning certificate and a building permit with Queen Anne's County. Ad+Soil was informed that no action would be taken until after a hearing was held on the above-mentioned Baker application. Such

a hearing was held and the board voted unanimously to grant the Baker application.

However, subsequent to the decision to grant the Baker application, Ad+Soil's applications previously submitted were not acted upon. Two weeks after the Baker decision, on October 11, 1983, the County Commissioners met to consider proposed amendments to the County's zoning ordinance. The amendments would require conditional use approval for sludge storage and distribution in an "M–2" zone. This apparently took Ad+Soil by surprise since Ad+Soil officials had asked Gardner to keep them informed of zoning amendments which related to sludge operations. (Complaint, Exhibit N). On October 25, 1983, the County Commissioners adopted the amendments. Pursuant to the amendments, Ad+Soil would have to obtain a conditional use permit. On December 22, 1983, Ad+Soil filed this action.

Plaintiff states five theories of recovery in the complaint which can be summarized as follows: 1.) the amendments to the zoning ordinance are so arbitrary and without rational basis that they violate the Fifth and Fourteenth Amendment guarantees of due process (as well as the parallel Maryland constitutional provisions); 2.) the actions of the County and its officials over the past two years present such an egregious pattern of bad faith and harassment that they violate the most basic guarantees of procedural due process contained in the Fifth and Fourteenth Amendments to the United States Constitution; 3.) the amendments are invalid as beyond the zoning power of the County; 4.) the amendments are preempted by a comprehensive state regulatory scheme; and 5.) that the amendments are in irreconcilable conflict with state statutory law. Plaintiff seeks injunctive and declaratory relief.

## DISCUSSION

As noted above, defendants move this Court to abstain from granting the relief requested by plaintiff because federal judicial intervention into the zoning and land use policies of Queen Anne's County and the State of Maryland would result in inappropriate and unnecessary federal interference with a complex state regulatory arrangement concerning important matters of state policy for which impartial and fair state remedies are available.

■■■ Initially, the abstention doctrine in general will be reviewed. It is well established as a matter of federal law that abstention is the exception and not the rule. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); *Planned Parenthood of Maryland, Inc. v. Mayor and Alderman of Annapolis*, Civ. No. N–78–501 (D.Md., April 7, 1978). However, there are three basic categories of cases where abstention *is* appropriate. Abstention under the standard set forth in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), is appropriate to avoid deciding a federal constitutional issue where the case may be disposed of by a decision on questions of state law. Abstention under *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), is appropriate to avoid needless state-federal friction caused by federal interference with the administration by the state of its own purely local affairs. Abstention under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), is appropriate where, absent bad faith harassment or a patently invalid state statute, federal jurisdiction has been invoked to restrain a state civil or criminal law enforcement proceeding. *See generally, Kent Island Joint Venture v. Smith*, 452 F.Supp. 455, 461 (D.Md.1978). Clearly, *Younger*-type abstention is not appropriate in the instant case. The issue for present determination is whether *Pullman* abstention, *Burford* abstention, or both, are appropriate in this instance.

■■■ The basic principle behind both *Pullman* and *Burford* abstention is that the federal courts should exercise discretion in the use of their equitable powers, particularly when asked to enjoin state offi-

cials in the exercise of their duties. This is especially true concerning local land disputes. Federal courts should refrain from injecting themselves into such disputes prior to adjudication by the state courts. *See: Ahrensfeld v. Stephens*, 528 F.2d 193 (7th Cir.1975). The instant case involves a local land dispute in which plaintiff challenges the actions of the Board and the propriety of the zoning amendments. It should be noted with emphasis that this case was brought prior to plaintiff's allowing the state court to review and interpret the amendments. It is particularly appropriate in zoning cases to allow the state court an opportunity to interpret the laws because "zoning clearly involves matters entirely within the realm of the state and local governments with which they are singularly familiar, and there are few local issues more sensitive." *Planned Parenthood v. Mayor and Alderman of the City of Annapolis*, Civil No. N–78–501, slip op. at 5 (D.Md. April 7, 1978).

■ Moreover, defendants point out that Ad+Soil has not exhausted all state remedies. Plaintiff argues that under the Fourth Circuit decision in *Wohl v. Keene*, 476 F.2d 171 (4th Cir.1973), the issue of whether adequate state remedies exist is irrelevant to abstention. This may be true; however, a distinction must be made between state judicial remedies such as the various avenues of appeal available in the Maryland State courts, and the county zoning permit procedures. It is this Court's view that plaintiff's action is premature since they have failed to even apply for the conditional use permit. It is this type of premature action that the *Pullman* abstention doctrine seeks to prevent. The *Pullman* doctrine indicates that the federal court should refrain to adjudicate matters where the state has not had an opportunity to act and where the state's action may avoid unnecessary resolution of a federal constitutional issue. Here, the zoning board may yet grant the permit to Ad+Soil. This may resolve the entire matter.

Plaintiff, however, argues that because Ad+Soil has invoked this Court's diversity jurisdiction, they are entitled to have their state law issues concerning the validity of the zoning amendments decided in this Court. This Court disagrees that diversity jurisdiction absolutely precludes abstention. Although Judge Winter stated in the *Wohl* case that the discretion to abstain is especially limited in diversity cases, it must be noted that in the *Wohl* case, Judge Winter specifically found that there was *not* an unsettled question of state law that only a state tribunal could authoritatively construe. *Wohl v. Keene*, 476 F.2d 171, 174 (4th Cir.1973). *See also: Educational Services v. Maryland State Board for Higher Education*, 710 F.2d 170, 175 (4th Cir.1983) (where it was held that abstention was not appropriate where there was no state issue which could be ruled upon, thus the federal constitutional issue could not, in any event, be avoided.) Even though diversity jurisdiction exists, the same considerations of comity and avoiding federal intervention into local land use policies still apply. *See, Smith v. Metropolitan Property*, 629 F.2d 757 (2d Cir.1980) (where it was held that abstention was appropriate despite existence of diversity jurisdiction, since federal court should not intervene in state policies concerning a comprehensive insurance regulation scheme.)

Here, the new zoning amendments have never been interpreted by the state courts. Although one issue is pending before Judge Raisin of the Circuit Court for Queen Anne's County, that issue is whether, under the former zoning law prior to the amendments, a conditional use permit would be required for sludge operations. The present question whether the sludge operations have been preempted by the Regulations of the Maryland Department of Health and Mental Hygiene is an unsettled question of state law.

■ Plaintiff suggests that, if this Court finds that the issue is unsettled, then it should be certified to the Court of Appeals of Maryland. However, under these circumstances, there is no advantage to fol-

lowing that procedure since the only federal question left for decision would be that involving due process. Instead, it would be far more beneficial to the parties in this action to have the matter *fully* resolved in the state court. Indeed, the facts of this case fall well within the ruling of the United States Court of Appeals for the Fourth Circuit in *Fralin & Waldron, Inc. v. City of Martinsville,* 493 F.2d 481 (4th Cir. 1974), which states:

> All of [the plaintiff's] claims raise legitimate questions involving municipal zoning ordinances, the correct construction of local land use law ..., and the delineation of the proper scope and exercise of local administrative discretion. Understandably, the courts of Virginia have extensive familiarity and experience with such matters, and we believe that they should have the initial opportunity to pass upon them. A state adjudication may well avoid the necessity of a decision on the federal constitutional question[s] presented as well as avoid needless friction in federal-state relations over the administration of purely state affairs.

493 F.2d at 482–83. *See also: Caleb Stowe v. County of Albemarle,* 724 F.2d 1079, at 1080–1081 (4th Cir.1984).

This Court finds that, under the above-cited authorities, abstention is appropriate in this action. It now must be decided whether jurisdiction should be retained pending the state court adjudication. The usual procedure is to retain jurisdiction in *Pullman* situations and to dismiss in *Burford* situations. Where abstention is appropriate under both doctrines, a federal court should refer all issues in the case to the state court and not retain jurisdiction. *Kent Island Joint Venture v. Smith,* 452 F.Supp. 455 (D.Md.1978); *Planned Parenthood, supra; Santa Fe Improvement v. City of Chula Vista,* 71 F.R.D. 573 (S.D. Cal.1976).

In the instant case, *Pullman* abstention is appropriate because unsettled issues of state law exist including issues concerning preemption by state law and the

Board's authority to enact the amendments. Also, it is possible that plaintiffs could obtain the necessary conditional use permit if they submit a proper application. Moreover, the outcome of the state litigation may avoid the need to decide the federal constitutional issue. Regarding *Burford* abstention, this Court finds that the *Burford* considerations also apply to the instant case, since it is clearly a local land use case. Zoning has repeatedly been held to be a particularly local affair. *See generally: Note, Land Use Regulation, The Federal Courts, and The Abstention Doctrine,* 89 Yale L.J. 1134, 1142 (1980). Thus, under both *Pullman* and *Burford,* abstention is appropriate.

Having found that both *Pullman* and *Burford* considerations are present, this Court will abstain from deciding this case and will dismiss the action.

A separate Order will be issued in accordance with this Memorandum.