WOODWARD & LOTHROP, INC.

v.

Robert R. NEALL, et al.

Civ. No. JFM–92–2125.

United States District Court,
D. Maryland.

Feb. 17, 1993.

Neil T. Proto, Verner, Liipfert, Bernhard, McPherson & Hand, Washington, DC, for plaintiff.

Stephen Legendre, Judson Garrett, Jr., Annapolis, MD, John Delaney, Gerald Heller, Theda Braddock and Kathryn Dahl, Silver Spring, MD, for defendant.

## MEMORANDUM

MOTZ, District Judge.

Woodward & Lothrop, Inc. ("W & L") has brought this action against Annapolis Mall Limited Partnership ("AMLP") and Anne Arundel County, Maryland and various officials of the County ("the County defendants"). W & L alleges that defendants' approval of a proposed expansion of the Annapolis Mall violates both a local land use and traffic ordinance and the due process clause of the Fourteenth Amendment. Defendants have filed a motion to dismiss.

### I.

The Annapolis Mall is located in Parole, Maryland. W & L also operates a department store in Parole. That store is located at Parole Plaza, approximately one-half mile from the Annapolis Mall.

In October 1991 AMLP submitted an "informal concept plan" for the proposed expansion of the Annapolis Mall. The plan was approved by the County defendants. In December 1991, AMLP submitted a formal plan which, on April 6, 1992, was also approved. Contending that the proposed expansion of the Mall violates the "Parole Town Center Growth Management Area Ordinance" ("the Parole ordinance"), W & L appealed the approval of AMLP's plan to

the County Board of Appeals. On July 8, 1992, the Board of Appeals dismissed the appeal for lack of standing. On July 30, 1992, W & L appealed that decision, as it is entitled to do under Maryland law, to the Circuit Court for Anne Arundel County. On the same day it filed this case.[1]

## II.

W & L's claim under 42 U.S.C. Section 1983 necessarily is premised upon its possession of a "property interest" protected by the Fourteenth Amendment. Relying upon the Fourth Circuit's decision in *Gardner v. City of Baltimore*, 969 F.2d 63 (4th Cir.1992), it contends that such an interest is created by provisions in the Parole ordinance mandating that certain requirements be met in connection with a "green area" set aside, storm water management, buffers for wetlands and traffic control.

In *Gardner* plaintiff landowners alleged that various officials of Baltimore City, under pressure from influential residents in the neighborhood where their property was located, improperly prevented plaintiffs from securing necessary approvals for residential development of their property. They claimed that defendants' actions violated procedural due process, substantive due process and the equal protection clause and constituted a taking without just compensation. The district court granted a motion for summary judgment filed by defendants, and plaintiffs appealed solely as to their substantive due process claims.

The Fourth Circuit began its analysis of the issues by broadly pronouncing that as a general rule federal courts should refrain from interfering in local land use matters.

> Resolving the routine land-use disputes that inevitably and constantly arise among developers, local residents, and municipal officials is simply not the business of the federal courts. There is no

sanction for casual federal intervention into what "has always been an intensely local area of the law." ... "Federal judges lack the knowledge of and sensitivity to local conditions necessary to a proper balancing of the complex factors" that are inherent in municipal land-use decisions. Further, allowing "every allegedly arbitrary denial by a town or city of a local license or permit" to be challenged under Section 1983 would "swell [ ] our already overburdened federal system beyond capacity." Accordingly, federal courts should be extremely reluctant to upset the delicate political balance at play in local land-use disputes. Section 1983 does not empower us to sit as a super-planning commission or a zoning board of appeals, and it does not constitutionalize every "run of the mill dispute between a developer and a town planning agency." In most instances, therefore, decisions regarding the application of subdivision regulations, zoning ordinances, and other local land-use controls properly rest with the community that is ultimately—and intimately—affected.

969 F.2d at 67–68 (citations omitted).

The court went on to recite the fundamental principle that the Fourteenth Amendment itself does not create property interests but rather protects property interests "stemm[ing] from an independent source such as state law...." 969 F.2d at 68 (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). Again quoting from *Roth,* the court stated: "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.*

1. W & L has instituted four other related administrative or judicial proceedings. On May 19, 1992, it filed an appeal to the Board of Appeals from a decision granting a grading permit issued to AMLP. That appeal was eventually dismissed by W & L. On June 22, 1992, it filed a petition to revoke the water quality certificate issued to AMLP by the Maryland Department of

the Environment. That petition is still pending. On June 30, 1992, W & L filed an action in the Circuit Court for Anne Arundel County under the Maryland Environmental Standing Act. W & L dismissed that action on October 30, 1992. On December 7, 1992, it appealed to the Board of Appeals a building permit issued to AMLP. That appeal remains pending.

■ Other courts have strictly defined what constitutes a "legitimate claim of entitlement" in the land use context, and in *Gardner* the Fourth Circuit followed their approach. Thus, the court opined that a property owner may be said to possess a legitimate claim of entitlement to the granting of a permit only if under the applicable state or municipal law

the local agency lacks *all* discretion to deny issuance of the permit or to withhold its approval. Any significant discretion conferred upon the local agency defeats the claim of a property interest. Under this standard, a cognizable property interest exists "only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured." ... "Even if in a particular case, objective observers would estimate that the probability of issuance was extremely high, the opportunity of a local agency to deny issuance suffices to defeat the existence of a federally protected property interest."

969 F.2d at 68 (citations omitted).

I quote from *Gardner* rather extensively because it constitutes the Fourth Circuit's most recent analysis of constitutionally protected property interests in the land use context. However, except to the extent that the court there emphasized that federal courts should refrain from interfering in local land use matters, its relevance to the instant case is questionable. As indicated above, the plaintiffs in *Gardner* were property owners seeking regulatory approvals for the development of their property. Here, in contrast, W & L is merely a resident in a geographical area in which another property owner is seeking regulatory approvals for development of its property. The law is well established that a person does not have a constitutionally cognizable property interest in another person's land use merely because that use may adversely affect the market value his own property.

See, e.g., *Mehta v. Surles*, 905 F.2d 595, 598–99 (2d Cir.1990); *Fusco v. Connecticut*, 815 F.2d 201, 205 (2d Cir.), *cert. denied*, 484 U.S. 849, 108 S.Ct. 149, 98 L.Ed.2d 105 (1987). This principle has been specifically applied to reject a claim brought under Section 1983 based upon a landowner's objection to the proposed use to which his adjacent neighbor intends to put his property. *See, e.g., Fusco v. Connecticut, supra; MacNamara v. County Council of Sussex County*, 738 F.Supp. 134, 143 (D.Del.), *aff'd, mem.* 922 F.2d 832 (3d Cir.1990).

■ It would seem to follow *a fortiori* that W & L does not have a constitutionally protected property interest in preventing the expansion of the Annapolis Mall. Any other result would have startling implications. W & L's property is approximately one-half mile away from the Mall, and its claim to a property interest arises solely from the fact that it is a resident of the Parole area. This status would be insufficient under Maryland law to confer standing to appeal a zoning decision. *See, e.g., DuBay v. Crand*, 240 Md. 180, 185, 213 A.2d 487, 489 (1965). Thus, as W & L's counsel conceded at oral argument, to read *Gardner* as conferring a property interest upon W & L and persons similarly situated would make federal judicial review of zoning decisions substantially broader than the review available in the state courts of Maryland. To say the least, this result would be paradoxical in light of the Fourth Circuit's primary admonition in *Gardner* that federal courts should not interfere in local land-use matters.[2]

Even if it is assumed, however, that W & L can bring itself within the rubric of *Gardner*, the Parole ordinance cannot be said to confer upon it any constitutionally protected property interest. No useful purpose would be served by my laboriously setting forth the provisions of the ordinance upon which W & L relies. The mere

---

**2.** Although it asserts that it has standing as to its state law claims under the Maryland Environmental Standing Act, *see infra*, W & L expressly foreswears reliance upon that statute as a basis for conferring upon it a constitutionally protected property interest. Its concession in that regard is appropriate. *See West Farms Assocs. v. State Traffic Comm'n*, 951 F.2d 469, 472 (2d Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1671, 118 L.Ed.2d 391 (1992).

fact that a contention is made does not make it worthy of a detailed response. Suffice it to say that although the Parole ordinance, like other zoning and land-use regulations, sets certain objective criteria which govern the development application and approval process, application of those criteria necessarily requires the exercise of judgment by regulatory officials. For example, while the ordinance provides that a development plan submitted to the Office of Planning and Zoning must contain 25% green area, green area is defined as an area which "provides light and air or scenic, recreational, or other similar benefits for a major structure or group of structures." Anne Arundel County Code, Art. 28, § 1–101(28)(i)(1). Likewise, the storm water management provisions of the ordinance require the making of informed judgments on such questions as discharge rates, channel erosions and water quality. *Id.* at § 3–203(a). These standards, while objective, are not so precise or self-defining that they strip the County's officials of all discretion in the decision-making process. Thus, under *Gardner,* AMPL has no property right to approval of its proposed expansion and W & L, conversely, has no property right to nonapproval of that expansion.

### III.

If W & L were merely invoking this court's supplemental jurisdiction over its state law claims under 28 U.S.C. Section 1367, I would decline to exercise that jurisdiction in light of my dismissal of W & L's federal claim. However, in addition to being a resident of Parole, W & L is a Michigan corporation with its principal place of business in Virginia. Accordingly, it has invoked this court's diversity jurisdiction as well, and further consideration of its state law claims is required.

The relief which W & L is seeking is a declaratory judgment that AMLP's proposed expansion of the Annapolis Mall violates the Parole ordinance in several respects. It contends that it has standing to seek such relief under the Maryland Environmental Standing Act ("MESA"). Md. Nat.Res.Code Ann. §§ 1–501 *et seq.* (1989 Repl.Vol.). That contention raises two issues: (1) whether, in fact, MESA does confer standing upon W & L to bring this action as a matter of state law, and (2) if so, whether the interest created by MESA in favor of W & L is sufficient to create a case or controversy within the meaning of Article III of the U.S. Constitution. Substantial doubt about the viability of W & L's standing exists on both of these scores.[3]

As to the state law question, Section 1–503(a)(3) does grant standing to "any ... person, regardless of whether he possesses a special interest different from that possessed generally by the residents of Maryland, or whether substantial personal property damage to him is threatened." However, Section 1–504(e) provides that "[t]his subtitle is not to be construed in any way to alter the present provisions of law relating to standing in matters effecting local zoning." Since W & L has been held not to be an "aggrieved" person within the meaning of Maryland zoning law, Section 1–504(e) would seem on its face to prevent W & L from making a challenge under MESA to the Mall's expansion.[4] As to the federal

---

3. On the eve of the hearing on defendants' motion to dismiss, W & L filed an amended complaint, alleging that it has taxpayer standing as to its traffic claims. In an accompanying letter its counsel stated that the filing of the amended complaint "obviates the need for the [scheduled] hearing" and peremptorily asserted that "accordingly the matter may be removed from your calendar." In light of my other rulings, I need not decide whether W & L possesses taxpayer standing, and I will not postpone issuance of this decision even to consider the question. To do so would be to benefit W & L for its strategy of delay.

4. A broader question (not briefed by the parties) is whether the General Assembly contemplated conferring standing upon anyone to bring an action in federal court under MESA. Various provisions in the statute suggest that the General Assembly intended to confer standing only in connection with suits instituted in state court as part of a comprehensive state remedial scheme. For example, Section 1–505(a) provides that any "action pursuant to this subtitle shall be brought *in the circuit court* where the alleged condition, activity, or failure complained of is occurring, has occurred, or is likely to occur." (emphasis added). Similarly, Section 1–507(b) provides

constitutional question, MESA, by its very terms, does not require the "particularized injury" which is essential for Article III standing. *See generally Lujan v. Defenders of Wildlife,* — U.S. —, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Valley Forge Christian College v. Americans United For Separation Of Church And State, Inc.,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *Sierra Club v. Morton,* 405 U.S. 727, 740–41 n. 16, 92 S.Ct. 1361, 1368–69 n. 16, 31 L.Ed.2d 636 (1972).

■ I need not decide these issues, however, because under applicable Fourth Circuit law I should both abstain from, and exercise my discretion not to issue a declaratory judgment as to, local land-use questions.

### A.

In *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the Supreme Court held that a federal court should have refrained from entertaining a constitutional challenge to the grant of an oil drilling permit by the Texas Railroad Commission where Texas had (1) enacted a comprehensive regulatory scheme concerning the issuance of such permits, and (2) created a centralized system of judicial review in the Texas courts. The doctrine of "*Burford* abstention" to which the case

gave birth has recently been formulated by the Court as follows:

> Where timely and adequate state court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989) (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)).

The Fourth Circuit has frequently applied the *Burford* doctrine in land-use cases.[5] For example, in *Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal,* 945 F.2d 760 (4th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1477, 117 L.Ed.2d 620 (1992), the court ruled that the district court should have abstained from deciding a Section

---

that the "Maryland Rules of Procedure apply *to all actions brought under this subtitle* except where the provisions of this subtitle specifically describe other procedures." (emphasis added). That provision clearly would be unconstitutional if the General Assembly were contemplating imposing the Maryland Rules of Procedure upon a federal court.

5. In the Fourth Circuit cases which I cite, it appears that the plaintiff did not invoke diversity jurisdiction. This perhaps could be viewed as an important fact distinguishing those cases from the instant case since in *Wohl v. Keene,* 476 F.2d 171 (4th Cir.1973), the Fourth Circuit indicated that the discretion to abstain is extremely limited in diversity cases. *Wohl,* however, did not involve a local land-use ordinance or other state regulatory scheme. Rather, it involved a claim that trustees of certain testamentary trusts had committed fraud, and the only basis on which the district court had abstained was that the plaintiff had an adequate remedy in the state equity courts.

In effect, it appeared that the district court had used the abstention doctrine for the inappropriate purpose of dodging a messy case. As the Fourth Circuit reminded, "Abstention is *not* appropriate solely to avoid the decision of difficult state law questions." 476 F.2d at 174. At the same time, however, in summarizing circumstances under which a federal court should properly stay its hand, the Fourth Circuit cited *Burford* for the proposition that "abstention may ... be warranted to avoid unnecessary conflict with the state in the administration of its own affairs." *Id.* Obviously, the question of whether such a conflict exists depends upon the extent and nature of the state or local regulatory scheme, not upon the basis on which federal jurisdiction is invoked. In that regard it should be remembered that *Burford* itself was a diversity case. *See also Ad+Soil Serv., Inc. v. Board of County Comm'rs,* 596 F.Supp. 1139, 1142 (D.Md. 1984).

1983 action brought by landowners against a municipality for failure to extend sewer service to their property in accordance with Virginia Annexation Court orders. In *Meredith v. Talbot County*, 828 F.2d 228 (4th Cir.1987), the court affirmed a decision by the district court to abstain from hearing a developer's claim that a decision by a county zoning board refusing to allow a subdivision was an unconstitutional "taking." Similarly, in *Browning–Ferris, Inc. v. Baltimore County*, 774 F.2d 77 (4th Cir.1985), the court affirmed the district court's decision to abstain from hearing a claim that in refusing to renew plaintiff's disposal permit, "defendants were motivated by improper political or personal motives and singled out ... [plaintiff] for adverse treatment during the permit renewal process." *Id.; see also Caleb Stowe Associates, Ltd. v. County of Albemarle*, 724 F.2d 1079 (4th Cir.1984); *Fralin & Waldron, Inc. v. City of Martinsville*, 493 F.2d 481 (4th Cir. 1974); *Northern Virginia Law School, Inc. v. City of Alexandria*, 680 F.Supp. 222 (E.D.Va.1988); *Ad+ Soil Serv. Inc. v. Board of County Comm's*, 596 F.Supp. 1139 (D.Md.1984); *Kent Island Joint Venture v. Smith*, 452 F.Supp. 455 (D.Md. 1978).

■ In many of these cases abstention was based not only upon *Burford* but also upon what is known as the *Pullman* abstention doctrine. That doctrine applies where resolution of a question of unsettled state law, which touches upon a matter of sensitive social policy of peculiar interest to the state, could obviate the need to decide a federal constitutional issue. *See generally Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Generally, where abstention is based upon *Burford*, dismissal of the action is ordered; whereas in *Pullman*-type cases, a stay of proceedings is ordered pending resolution of parallel state litigation. This dichotomy can be seen in the Fourth Circuit cases, some of which have resulted in dismissal, the others in a stay. In the present case, the *Pullman* doctrine simply does not apply since I have held that W & L has not stated a viable federal constitutional claim and since, by definition, the doctrine does not apply to questions exclusively involving state law. Thus, dismissal is clearly the proper route to follow here.

**B.**

Even were I not to abstain from hearing the claims which W & L had asserted under the Parole ordinance, I would exercise my judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 (1988), not to declare the parties' respective rights and duties under the ordinance.

In *Mitcheson v. Harris*, 955 F.2d 235 (4th Cir.1992), the Fourth Circuit ruled that the district court should have declined to exercise its discretion under the Declaratory Judgment Act to decide the question of an insurer's obligation to defend and indemnify its insured in a suit then pending in state court. Although the factual context in which *Mitcheson* arose obviously is different from the one presented in this case, the two principles which led to the *Mitcheson* result are fully applicable here. First, all of the questions on which W & L is seeking a declaratory judgment "depend solely upon state law." 955 F.2d at 238. Second, the state interest in favor "of resolving all litigation stemming from a single controversy in a single court system," *id.* at 239, is genuinely threatened in this case since, as indicated above, *see* footnote 1, *supra*, W & L has instituted numerous other related proceedings before the County Board of Appeals and the Circuit Court for Anne Arundel County. W & L can make the same claims in those fora that it is making here, and the interests of comity and wise judicial administration dictate that this court require W & L to do so.

For these reasons defendants' motion to dismiss will be granted.