In re TUDOR ASSOCIATES, LTD., II,
a Nebraska limited partnership,
Debtor.

Nicholas C. CHMIL, Jr.; James H. Markley; Gerald Nissman; Leonard Weiss; Robert J. Zullo; Tudor Associates, Ltd., II, Plaintiffs–Appellants,

v.

RULISA OPERATING COMPANY, a New Jersey limited partnership; New British Woods Associates, a New Jersey limited partnership; New Yorktowne Associates, a New Jersey limited partnership; AJ & AJ Servicing, Incorporated, a New Jersey corporation; Johnson Matthey Bankers, Limited of London, Defendants–Appellees,

and

A.T. Parsons, Jr.; Import Export Management Corporation, a New Jersey corporation; Paul Garfinkle; O.C.G. Enterprises, Incorporated, a Massachusetts corporation; Executive Management Trustees, Incorporated, an Ohio corporation; Executive Management Trustees, Incorporated, a Nevada corporation; Berolina Handels, A.G., a Swiss corporation, Defendants.

In re TUDOR ASSOCIATES, LTD., II,
a Nebraska limited partnership,
Debtor.

Nicholas C. CHMIL, Jr.; James H. Markley; Gerald Nissman; Leonard Weiss; Robert J. Zullo; Tudor Associates, Ltd., II, Plaintiffs–Appellees,

v.

JOHNSON MATTHEY BANKERS,
LIMITED OF LONDON,
Defendant–Appellant,

Rulisa Operating Company, a New Jersey limited partnership; New British Woods Associates, a New Jersey limited partnership; New Yorktowne Associates, a New Jersey limited partnership; AJ & AJ Servicing, Incorporated, a New Jersey corporation; Executive Management Trustees, Incorporated, an Ohio corporation, Defendants–Appellees,

and

A.T. Parsons, Jr.; Import Export Management Corporation, a New Jersey corporation; Paul Garfinkle; O.C.G. Enterprises, Incorporated, a Massachusetts corporation; Executive Management Trustees, Incorporated, a Nevada corporation; Siby Land Corporation, a New Jersey corporation; Berolina Handels, A.G., a Swiss corporation, Defendants.

In re TUDOR ASSOCIATES, LTD., II,
a Nebraska limited partnership,
Debtor.

Nicholas C. CHMIL, Jr.; James H. Markley; Gerald Nissman; Leonard Weiss; Robert J. Zullo; Tudor Associates, Ltd., II, Plaintiffs–Appellees,

v.

RULISA OPERATING COMPANY, a New Jersey limited partnership; New British Woods Associates, a New Jersey limited partnership; New Yorktowne Associates, a New Jersey limited partnership, Defendants–Appellants,

and

A.T. Parsons, Jr.; Import Export Management Corporation, a New Jersey corporation; AJ & AJ Servicing, Incorporated, a New Jersey corporation; Paul Garfinkle; O.C.G. Enterprises, Incorporated, a Massachusetts corporation; Executive Management Trustees, incorporated, an Ohio corporation; Executive Management Trustees, Incorporated, a Nevada corporation; Siby Land Corporation, a New Jersey corporation; Berolina Handels, A.G., a Swiss corporation; Johnson Matthey Bankers, Limited of London, Defendants.

Nos. 92–2201, 92–2204 and 92–2274.

United States Court of Appeals,
Fourth Circuit.

Argued July 14, 1993.

Decided March 28, 1994.

**ARGUED:** R. Stuart Huff, Coral Gables, Florida, for appellants. Cecil W. Harrison,

Jr., Poyner & Spruill, Raleigh, NC, for appellees. **ON BRIEF:** Mark L. Mallios, Coral Gables, Florida, for appellants. Richard N. Cook, Maupin, Taylor, Ellis & Adams, P.A., Raleigh, NC, for appellee AJ & AJ Servicing; Daniel Wallen, Anthony M. Piccione, Otterbourg, Steindler, Houston & Rosen, P.C., New York City; Michael E. Weddington, Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, Raleigh, NC, for appellee Johnson Matthey Bankers.

Before PHILLIPS and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

## OPINION

BUTZNER, Senior Circuit Judge:

The primary issue in this appeal pertains to the appellees' contention that the appellants lost their right to appeal the bankruptcy court's judgment to the district court by accepting the benefit of the judgment. The district court properly denied the appellees' motion to dismiss. Nor did it err in deciding other issues that can be best understood in the context of the facts of this bankruptcy proceeding.

### I

The appellants are Tudor Associates Ltd. II and five of its limited partners. The appellees are limited partnerships that hold fee title to three properties in North Carolina and have a leasehold interest in a third. For convenience, the appellees will be called the owners, and the real estate will be designated as the properties. Johnson Matthey Bankers Ltd., a former appellee, settled its differences with Tudor and the trustee of Tudor's bankruptcy estate pending this appeal.

Stripped of details, the evidence discloses that OCG, a George Osserman company, acquired the properties, which were heavily mortgaged. Osserman then organized Tudor as a tax shelter and named Zan Galloway, his confidant, general partner. OCG transferred the properties to Tudor, receiving in payment a note secured by a wraparound deed of trust.

In 1977, Tudor filed a petition in bankruptcy and remained as debtor in possession represented by Galloway. Without objection the bankruptcy court allowed OCG's claim. In 1979, Tudor sought permission to sell the properties to Executive Management Trustees, Inc., an Ohio corporation (EMT–O). In the meantime, EMT–O had acquired Tudor's note from OCG's assignee. EMT–O proposed to pay for the properties by assuming the underlying indebtedness and canceling the note and OCG's claim against Tudor. EMT–O advised the court that neither OCG nor Osserman had any business connections or association with EMT–O. It also advised the court that it intended simultaneously to sell the properties to four limited partnerships for notes secured by deeds of trust. AJ & AJ Servicing, Inc., another appellee, organized the limited partnerships. After the court gave notice of the proposed sale to all creditors and Tudor's limited partners, it approved the sale without objection. At the time of the sale, all of Tudor's trade creditors had been paid and payments on the underlying encumbrances were current. Simultaneously, EMT–O conveyed the properties to the AJ limited partnerships in exchange for notes.

EMT–O assigned a one-half interest in the notes to an Osserman company, Executive Management Trustees, Inc., a Nevada corporation (EMT–N). EMT–O assigned the other one-half interest to AJ as a finder's fee, for forming the limited partnerships that purchased the properties, and for AJ's work as servicing agent for all the notes. All the notes and deeds of trust were delivered to AJ.

In 1983, Tudor's limited partners learned that Osserman, who was their attorney-in-fact, owned EMT–O through other corporations that he controlled. The limited partners brought this adversary proceeding seeking to set aside the 1979 sale of Tudor's property on the ground of fraud and to quiet title to the properties in the name of Tudor.

The bankruptcy court held that the limitations contained in Section 511 of the Bankruptcy Act of 1898 and Federal Rule of Civil Procedure 60(b)(3) barred the limited part-

ners' claim of fraud. No statutory limitation, however, bars relief for fraud upon the court.

The bankruptcy court found that Galloway and Osserman entered into a scheme to benefit themselves and deprive Tudor's limited partners of their equity in the property in the amount of $11,600,000. To accomplish their fraud, Galloway arranged the private sale to EMT-O, knowing that EMT-O's representation that Osserman had no connection with EMT-O was false. The court relied on this misrepresentation; it would not have approved the sale if it had known the truth.

The bankruptcy court concluded that Galloway deliberately used the bankruptcy proceedings to benefit Osserman and herself while she was acting as an officer of the court. Her conduct, the court ruled, breached her obligation to deal truthfully and honestly with the court and constituted fraud on the court. The bankruptcy court removed Galloway from her position as representative of Tudor and appointed a trustee of Tudor's bankruptcy estate.

The bankruptcy court awarded judgment to Tudor against EMT-O for compensatory damages in the amount of $11,600,000. It voided EMT-O's transfer of one-half interest in the notes to EMT-N and all subsequent transfers. It impressed this interest with an equitable lien for Tudor in the amount of $11,600,000. It found that the owners were bona fide purchasers for value and that the transfer of the one-half interest in the notes to AJ was supported by consideration. Consequently, it declined to award the properties to Tudor.

The district court affirmed the bankruptcy court's judgment with a modification of the interest of Johnson Matthey Bankers, which is no longer pertinent to this appeal.

## II

■ We first address the district court's denial of the property owners' motion to dismiss Tudor's appeal from the bankruptcy court to the district court.

After Tudor and its partners filed their appeal in the district court, counsel for the trustee wrote the lawyer who represented the owners:

I am formally declaring an acceleration of the balance due on the notes and mortgages [that are subject to Tudor's equitable lien] . . . On behalf of the plaintiffs and as counsel to the trustees . . . we have accelerated the balance due on the four notes and mortgages and that we shall be taking steps next to file foreclosure proceedings or other collection methods.

The lawyer representing the owners responded: "I believe you are without authority, legally or factually, to attempt to declare an acceleration of the notes and mortgages." The trustee and Tudor then took ineffectual steps to enforce the equitable lien.

The district court denied the motion to dismiss because Tudor's attempt to enforce its judgment against EMT-O by seeking to foreclose its equitable lien was sufficiently divisible from its right to pursue an appeal in which it sought to show that the owners did not rightfully hold title to the properties. See Finefrock v. Kenova Mine Car Co., 37 F.2d 310, 314 (4th Cir.1930). The district court concluded that Tudor had not waived its right to appeal and denied the owners' motion to dismiss the appeal.

■ The owners rely upon a principle stated in a number of cases including Wohl v. Keene, 476 F.2d 171 (4th Cir.1973): "As a general rule, when a party knows the facts and *voluntarily* accepts the benefits of a judgment, he thus waives any errors in the decree and estops himself from appealing the decree." 476 F.2d at 177 (emphasis in original).

■ This principle, however, is not absolute. This court in Gadsden v. Fripp, 330 F.2d 545 (4th Cir.1964), explained its proper application. An appeal is barred when circumstances "indicate an intention to finally compromise and settle a disputed claim . . . it is the mutual manifestation of an intention to bring the litigation to a definite conclusion upon a basis acceptable to all parties which bars a subsequent appeal. . . ." 330 F.2d at 548.

In the case before us, the owners resisted Tudor's efforts to enforce its lien. Tudor has not foreclosed, and it has not received any-

thing in payment of its judgment. The owners' opposition demonstrates that the parties lacked the mutual intention to bring this litigation to a close. For these reasons and the reasons stated by the district court we find no error in the district court's refusal to dismiss Tudor's appeal.

### III

■ Tudor assigns error to the district court's judgment affirming the bankruptcy court's ruling that the fee owners were bona fide purchasers for value and that AJ had a valid interest in the notes. We review the district court's judgment de novo. *In re Bryson Properties, XVIII*, 961 F.2d 496, 499 (4th Cir.1992). We review the bankruptcy court's findings of fact under the clearly erroneous standard, Bankr.R. 8013; *Willemain v. Kivitz*, 764 F.2d 1019, 1022 (4th Cir.1985), and its conclusions of law de novo. *In re Bryson*, 961 F.2d at 499. During the 11–day trial of this case the bankruptcy court had ample opportunity to assess the credibility of the witnesses, and we must give due regard to its assessment. Bankr.R. 8013; Fed. R.Civ.P. 52(a).

■ A bona fide purchaser for value is "one who purchases the assets for value, in good faith, and without notice of adverse claims." *Willemain*, 764 F.2d at 1023 (citations omitted). Generally, a buyer at a bankruptcy sale purchases for value by payment of 75% of the appraised value of the asset. *Willemain*, 764 F.2d at 1023. Tudor concedes that the purchase price of the properties was equivalent to the fair market value. But it contends that to ascertain the value the owners paid, AJ's one-half interest in the purchase notes should be subtracted from the total paid to EMT–O for the properties. This deduction would result in less than 75% payment of the appraised value of the properties. Tudor cites *Bullard v. Aluminum Co. of America*, 468 F.2d 11 (7th Cir.1972), for the proposition that a transfer made to benefit a third party—in this case, AJ—may not be considered in measuring what the owner paid.

*Bullard*, however, does not support Tudor. In that case, within a year prior to bankruptcy, an insolvent company paid a creditor a substantial sum to discharge an antecedent debt and to relieve the president of the insolvent company from a judgment based on the president's guarantee of the debt. In the company's subsequent bankruptcy, the court held that the transfer was fraudulent because it benefitted the president to the detriment of the debtor and its creditors. 468 F.2d at 14.

In contrast to *Bullard*, none of Tudor's creditors was harmed by the transaction between EMT–O, the property owners, and AJ. In addition, the bankruptcy court found, and the district court affirmed, that the transfer of a one-half interest in the purchase money notes was supported by adequate consideration. The district court correctly held that AJ's interest should not be deducted from the purchase price and that the owners paid value for the properties.

■ Perhaps a closer question is whether Alan Jacobs, who represented AJ and the owners, acted in good faith. The answer depends on whether Jacobs knew or had constructive knowledge of the fraud on the court. One "cannot knowingly take advantage of a fiduciary's breach of duty." *In re Transcontinental Energy Corp.*, 683 F.2d 326, 328 (9th Cir.1982).

Tudor points to circumstances from which one could draw inferences that Jacobs, who was an attorney and accountant, knew that Osserman controlled EMT–O and consequently knew or should have known of the fraud. Tudor emphasizes that AJ concealed its interest in the notes by failing to record it until four years after the transfer from EMT–O; that no bona fide purchasers would have accepted title to the properties; and that the court should draw a negative inference from the owners' and the title attorney's invocation of the attorney-client privilege on several occasions.

■ Relying on testimony from several sources to the effect that Jacobs did not know that Osserman had any connection with EMT–O, the district court concluded, in agreement with the bankruptcy court, that Jacobs neither participated in the fraud nor had actual or constructive knowledge of it. Although the district court deemed AJ's de-

layed recordation of its interest in the notes "questionable," it declined to infer fraud from this omission. Osserman undoubtedly negotiated with Jacobs, but Osserman posed as the representative of Tudor—not EMT-O. The bankruptcy court found that the owners employed competent title counsel. A negative inference should not be drawn from the proper invocation of the attorney-client privilege. *Parker v. Prudential Ins. Co.*, 900 F.2d 772, 775 (4th Cir.1990).

Tudor contends that the bankruptcy court improperly assigned the burden of proof to it on the bona fide purchaser issue. We reject this argument as an attempt to circumvent the court's credibility determinations. Nowhere in the bankruptcy court's opinion does the court indicate that Tudor bore the burden of proof. Rather, upon weighing the credibility of the witnesses, the court decided that the owner's status as bona fide purchasers for value was the more credible account. We must respect this credibility judgment. Bankr.R. 8013.

We find nothing in Tudor's other arguments that would justify reversal of the district court. The bankruptcy court's findings of fact are not clearly erroneous. Neither the bankruptcy court nor the district court misapplied the law.

*AFFIRMED.*